**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT JACKSON**

FILED

_____

| | | |
|---|---|---|
| | ) | |

**SARAH MAY (CHILDERS)**      )      McNairy County General Sessions Court
**(HARRISON) ANDERSON**,      )      No. 1955

**January 7, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

     )

    Plaintiff/Appellant.     )

     )

VS.     )     C.A. No. 02A01-9805-GS-00132

     )

**WILLIAM TRAVIS HARRISON, SR.**,     )

     )

    Defendant/Appellee.     )

     )

_____

From the General Sessions Court of McNairy County at Selmer.
**Honorable Bob G. Gray, Judge**

**Chadwick G. Hunt**, Savannah, Tennessee
Attorney for Plaintiff/Appellant.

**Dennis W. Plunk**, Savannah, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**MODIFIED IN PART, AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiff Sarah May Anderson appeals the trial court's order enforcing the final divorce decree which was previously entered by the court in December 1981. The trial court enforced the decree's provision relative to the division of the parties' former marital home by requiring Defendant/Appellee William Travis Harrison, Sr., to pay to the Plaintiff the sum of $12,084.36 for her interest in the property. The trial court enforced the decree's provision requiring the Defendant to pay a reasonable amount of child support to the Plaintiff by ordering the Defendant to pay to the Plaintiff the sum of $2250 for nine months of child support; however, the court ruled that all other claims for child support were barred by the ten-year statute of limitations applicable to actions on judgments and decrees. Based on our conclusion that both of these rulings were in error, we modify in part, affirm in part, and reverse in part the trial court's judgment.

## I. Factual and Procedural History

The final divorce decree entered in December 1981 incorporated by reference the provisions of the parties' November 1981 Property Settlement Agreement (PSA). The PSA contained the following provision relative to the disposition of the marital home:

> The parties own a house situated upon a twenty (20) acre tract, which is titled in the Husband's name. The parties agree that the Husband shall have and receive said tract, and all rights, title and interest which the Wife might have in same will be divested from her and vested in the Husband. Said house and twenty (20) acres secures an obligation to the Selmer Bank & Trust Company, and the parties agree that the Husband will assume said indebtedness and save and hold harmless the Wife therefrom. However, should the Husband ever sell all or any part of the twenty (20) acre tract and house, he agrees that any funds derived therefrom, after payment of the aforesaid mortgage, and any expenses of closing, shall be divided equally between the parties hereto.

The parties agreed that the Plaintiff would have custody of the parties' two sons, William Harrison, born September 6, 1966, and Wallace Harrison, born July 13, 1970. As for the Defendant's obligation to pay child support, the PSA provided that he was "not being required to pay a sum certain." In executing the PSA, however, the parties acknowledged that "either party could return to Court to have a sum certain amount established at any time either party should become dissatisfied with this arrangement." In addition to these provisions, the final divorce decree

contained the following provision relative to the Defendant's child support obligation:

> [A]nd it further appears to the Court that the Defendant is an able-bodied man and fully capable of paying child support and under the present circumstances, he should pay a reasonable amount of support directly to the Plaintiff, ALL OF WHICH IS SO ORDERED, ADJUDGED AND DECREED.

In October 1997, the Plaintiff filed a petition for injunctive and other relief against the Defendant. As amended, the Plaintiff's petition alleged that the Defendant planned to sell the former marital home without paying to the Plaintiff her lawful share of the equity in the property. The petition sought an injunction against the Defendant's proposed sale of the property or, in the alternative, a judgment for the Plaintiff's lawful share of the equity in the property. The Plaintiff's petition additionally alleged that the Defendant had paid virtually no child support since the divorce, and the petition sought a judgment for "a reasonable amount in child support arrearage" for the period from 1981 to 1989.

The Defendant responded by filing a petition to enforce the final divorce decree. In his petition, the Defendant alleged that he planned to sell the subject property to his brother for a price of $70,000. The Defendant acknowledged that, at the time of the parties' divorce, the balance on the mortgage at Selmer Bank & Trust Company was $27,284.01. The Defendant indicated, however, that in the years following the divorce, he had increased this indebtedness to $45,831.29 by signing fifteen separate, additional notes on the property. These notes allegedly represented the cost of improvements to the house and land made by the Defendant. The Defendant contended that it would be inequitable and unconscionable for the Plaintiff to receive one-half of the proceeds from the sale of the property without contributing equally to the payment of the additional indebtedness to Selmer Bank & Trust Company. Consequently, the Defendant argued that the Plaintiff's share of the net equity in the property should be limited to $12,084.35 (($70,000 - $45,831.29 = $24,168.71) ÷ 2 = $12,084.35), and he asked the trial court to enforce the final divorce decree by awarding this sum to the Plaintiff.

The trial court agreed with the interpretation of the PSA urged by the Defendant and entered a judgment enforcing the decree accordingly. On appeal, the Plaintiff contends that this

ruling was in error. Additionally, the Plaintiff contends that the trial court erred in ruling that most of the Plaintiff's claim for child support was barred by the ten-year statute of limitations applicable to actions on judgments and decrees. *See* T.C.A. § 28-3-110(2) (1980).

### II. Disposition of Equity in Former Marital Home

As an initial matter, we must respectfully disagree with the trial court's interpretation of the applicable provision of the PSA relative to the disposition of the former marital home. In the event the Defendant ever sold the property, this provision entitled the Plaintiff to receive one-half of "any funds derived" from the sale after payment of "the aforesaid mortgage." We conclude that the term "aforesaid mortgage" could refer only to the mortgage which existed at the time of the parties' divorce and not to any subsequent obligations incurred by the Defendant. *See Clark v. Clark*, 620 S.W.2d 536, 538 (Tenn. App. 1981) (holding that divorce decree making marital home subject to "any encumbrances" would subject property only to encumbrances that existed as of date of decree and, thus, deed of trust executed by husband alone did not affect wife's interest in property). In our view, it is immaterial that the Defendant's subsequently-incurred obligations may have been made to the same lending institution as the mortgage which existed at the time of the divorce.

On appeal, the Defendant insists that it would be inequitable to permit the Plaintiff to share in any increased value of the property without sharing in the additional indebtedness associated with the property. We disagree. Like other contracts, property settlement agreements must be interpreted and enforced according to their plain terms. *See Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. App. 1990); *see also Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *accord Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. App. 1995). As acknowledged in the Defendant's brief, the PSA did not "freeze" or define the Plaintiff's equitable interest in the property as of the time of the parties' divorce. Instead, the PSA entitled the Plaintiff to one-half of "any funds derived" from the sale of the property, after the payment of certain obligations, regardless of when the sale occurred. In defining these obligations, the PSA referred to a specific mortgage which was in existence at the time of the divorce. As we previously explained, the existing mortgage could not have included the later-

incurred obligations of the Defendant. *See Clark*, 620 S.W.2d at 538.

Moreover, after reading the transcript of the evidence presented below, we are not convinced that the $70,000 sale price is substantially higher than the value of the property at the time of the divorce. The Defendant testified that, in his opinion, the property was worth only about $30,000 to $32,000 at the time of the divorce. The Defendant admitted, however, that at the time of the divorce, a real estate agent listed the property for sale at a price of $64,500. Although the Defendant also testified that nobody purchased the property at the listed price, his admission that the parties listed the property for a price of $64,500 greatly undermines his testimony that the property was worth only $30,000.

In her petition for relief, the Plaintiff alleged that the mortgage referenced in the PSA had been paid in full. At the hearing below, however, the Plaintiff failed to prove that the mortgage had been paid in full. Instead, the Plaintiff merely was able to show that the amount of the indebtedness had increased by $18,547.27. We agree with the Plaintiff's contention that she should not be charged with this additional indebtedness. Accordingly, we modify the trial court's judgment to require the Defendant to pay $21,358 to the Plaintiff for her share of the equity in the former marital home (($70,000 - $27,284.01 = $42,715.99) ÷ 2 = $21,358).

### III.  Child Support Arrearages

We also agree with the Plaintiff's contention that the trial court erred in denying all but nine months of her claim for child support arrearages. Previous decisions of this court suggested that the ten-year statute of limitations for enforcing judgments and decrees[1] did not apply to the enforcement of child support orders. *See Basham v. Basham*, No. 01A01-9402-GS-00047, 1994 WL 388281, at **2-3 (Tenn. App. July 27, 1994); *Sandidge v. Brown*, No. 03A01-9104-CV-00142, 1991 WL 167149, at **2-3 (Tenn. App. Sept. 3, 1991); *Pera v. Peterson*, 1990 WL 200582, at *2 (Tenn. App. Dec. 14, 1990); *State ex rel. Woody v. Morris*, 1990 WL 2867, at *2 (Tenn. App.

---

[1]As pertinent, section 28-3-110(2) provides that actions on judgments and decrees of courts of record of this or any other state "shall be commenced within ten (10) years after the cause of action accrued." T.C.A. § 28-3-110(2) (1980).

Jan. 19, 1990). The court recognized an exception to this rule, however, in cases where the child support arrearages had been reduced to judgment. In those cases, the court required the custodial parent to bring the action for enforcement within ten years of obtaining the judgment for arrearages. *See Vaughn v. Vaughn*, 1988 WL 68062, at *4 (Tenn. App. July 1, 1988); *see also Thomas v. Thomas*, 1988 WL 55722, at *1 (Tenn. App. June 2, 1988).

Recent decisions by this court have demonstrated a growing acceptance of the premise that the ten-year statute of limitations applies to child support orders just as it applies to any other judgment or decree. *See In re Estate of Meader*, No. 03A01-9707-CH-00252, 1997 WL 672205, at *2 (Tenn. App. Oct. 30, 1997); *Gafford v. Gafford*, No. 01A01-9404-CV-00178, 1994 WL 687077, at **3-4 (Tenn. App. Dec. 9, 1994); *Rodakis v. Byrd*, No. 03A01-9206-GS-00202, 1992 WL 301312, at *4 (Tenn. App. Oct. 23, 1992). One such case held that the statute of limitations began to run on the date the last child support payment was due and payable under the express terms of the judgment or, if no such date was established, on the date the obligor's legal obligation to support the child ended. *Rodakis*, 1992 WL 301312, at *3. In contrast, another decision held that the statute of limitations began to run as to each child support payment on the date that payment was due. *Gafford*, 1994 WL 687077, at *4; *see also Roberts v. Roberts*, 1990 WL 130816, at *1 (Tenn. App. Sept. 12, 1990), *perm. app. denied* (Tenn. Jan. 14, 1991). This latter rule appears to be the one applied by the trial court in the present case because the court ruled that the Plaintiff could not recover any child support payments due more than ten years prior to when she filed her petition in October 1997. The trial court awarded the Plaintiff child support only for the nine-month period from November 1987 to July 1988, when the parties' younger son reached the age of eighteen.

The foregoing cases indicate that, over the past ten years, some uncertainty has existed as to (1) whether the ten-year statute of limitations applies to actions to enforce child support orders and, (2) if so, when the statute begins to run. We need not resolve this uncertainty, however, because the legislature has resolved it for us. Effective July 1, 1997, prior to the filing of Plaintiff's petition, the legislature enacted the following statutory provision:

Judgments for child support payments for each child subject

> to the order for child support pursuant to this part shall be enforceable without limitation as to time.

T.C.A. § 36-5-103(g) (Supp. 1997) (amended by 1997 Tenn. Pub. Acts 551). In short, this amendment effectively has resolved any uncertainty as to the applicability of the ten-year statute of limitations by providing that child support orders shall be enforceable without limitation as to time.

In light of the foregoing amendment, we conclude that the trial court erred in ruling that the ten-year statute of limitations barred most of the Plaintiff's claim for child support arrearages in this case. Accordingly, we remand this case for the trial court to determine the additional amount of child support arrearages due for the period from December 1981, when the final divorce decree was entered, until October 1987. In remanding this matter, we note that neither party has challenged the trial court's implicit determination that $250 per month constituted a reasonable amount of child support to be paid by the Defendant ($2250 ÷ 9 months = $250). We also note that, by his own admission, the Defendant has paid a total of only $245 in child support since the parties' divorce.

In affirming the trial court's award of child support in the amount of $2250 for the nine-month period from November 1987 to July 1988, and in remanding this case for the calculation of the additional arrearages owed, we reject the Defendant's argument that any award of child support in this case constituted a retroactive modification which was prohibited by statute. *See Rutledge v. Barrett*, 802 S.W.2d 604, 606-07 (Tenn. 1991); T.C.A. § 36-5-101(a)(5) (1996 & Supp. 1997).[2] Although this precise issue apparently has not been addressed by the courts of this state, this argument was considered and rejected by the Colorado Court of Appeals in a similar case. In *In re Marriage of Meisner*, 807 P.2d 1205, 1207 (Colo. Ct. App. 1990), the parties' separation agreement did not require the father to pay a sum certain as child support but instead merely required both parties to "contribute whatever may be necessary . . . for the support of their children." Six years after the parties' divorce, the mother filed a motion to enforce the decree, alleging that the father had contributed less than $3,000 toward the children's support since the divorce. *Meisner*, 807 P.2d at

---

[2]As pertinent, section 36-5-101(a)(5) provides that any judgment for child support "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed." T.C.A. § 36-5-101(a)(5) (1996 & Supp. 1997). In *Rutledge v. Barrett*, 802 S.W.2d 604, 606-07 (Tenn. 1991), our supreme court held that this statute bars the retroactive modification of child support orders.

1207. The father responded by moving to dismiss the mother's enforcement action. In support of his motion to dismiss, the father contended that the settlement agreement was unenforceable for lack of a specific support figure and, further, that an award of arrearages would constitute a retroactive modification of the support order contrary to statute. *Id*. (citing Colo. Rev. Stat. § 14-10-122(1) (Supp. 1990)).

In rejecting the father's contentions, the court explained:

> The separation agreement at issue here states in clear and unequivocal language that the parties will each contribute "whatever may be necessary . . . for the support of their children." The foregoing language constitutes a binding promise on the part of the father to contribute to his children's financial support. *See In re Marriage of Robinson*, [629 P.2d 1069 (Colo. 1981)]; *In re Marriage of Norton*, [757 P.2d 1127 (Colo. App. 1988)]; *In re Marriage of Lamm*, 682 P.2d 67 (Colo. App. 1984). The only uncertainty is the amount of support owed by the father and whether the omission of a definite support obligation renders the support agreement unenforceable. We conclude that it does not.

> A decree should be construed so as to render it lawful, operative, and effective. *See Thompson v. Crocker*, 18 Colo. 328, 32 P. 831 (1893). If a provision essential to the validity of the decree has been omitted, the obligation will be implied and enforced even though not specifically set forth. *See Orr v. Arapahoe Water & Sanitation District*, 753 P.2d 1217 (Colo. 1988).

> Likewise, enforcement of this obligation does not constitute retroactive modification of the decree. The original decree established a duty on behalf of both parties to provide the necessary financial support for their children. A determination by the trial court of a reasonably necessary amount is an interpretation of a valid, existing decree. *See In re Marriage of Saiz*, 634 P.2d 1020 (Colo. App. 1981).

> Both parties should honor and fulfill all obligations made between them and ordered by the court. . . . To allow otherwise would permit father unilaterally to terminate his child support obligation, without himself obtaining an order of modification. *See Abrams v. Connolly*, 781 P.2d 651 (Colo. 1989).

*Meisner*, 807 P.2d at 1208.

We similarly conclude that enforcement of the final divorce decree does not constitute a retroactive modification of the Defendant's child support obligation in the present case. The final decree required the Defendant to "pay a reasonable amount" of child support to the Plaintiff. The

trial court's determination of what constitutes a "reasonable amount" does not modify the final decree but, instead, merely interprets and enforces this provision of the decree. *See Meisner*, 807 P.2d at 1208; *see also Moscheo v. Moscheo*, 838 S.W.2d 226, 227-28 (Tenn. App. 1992) (affirming trial court's finding that $6000 constituted reasonable amount of tuition to be paid by father where marital dissolution agreement required father to pay "reasonable college tuition" on behalf of parties' child); *Burkeen v. Burkeen*, No. 02A01-9109-GS-00194, 1992 WL 85800, at **3-4 (Tenn. App. Apr. 29, 1992) (reversing and remanding for trial court to determine amount of child support arrearage due plaintiff because, although final decree was inartfully drawn in that it required defendant to pay only "reasonable sum out of his future earnings," this language did not relieve defendant of his legal obligation to pay child support).

## IV. Conclusion

The trial court's judgment is hereby modified to require the Defendant to pay to the Plaintiff the sum of $21,358 for her interest in the subject real property. The trial court's award of child support in the amount of $2250 for a period of nine months is affirmed; however, we reverse that portion of the judgment denying the Plaintiff's request for additional child support, and we remand this cause for the trial court to determine the additional amount of child support arrearages due for the period from December 1981 until October 1987. Costs of this appeal are taxed to the Defendant, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)