**Patsy Olene Barrett RUTLEDGE, Petitioner–Appellee,**

v.

**James Albert BARRETT, Respondent–Appellant.**

Supreme Court of Tennessee, at Nashville.

Jan. 7, 1991.

Sam E. Wallace, Nashville, for petitioner-appellee.

Joe P. Binkley, Jr., Nashville, for respondent-appellant.

DAUGHTREY, Justice.

### OPINION

In this appeal, we are asked to resolve the question we left open in *Hoyle v. Wil-*

*son,* 746 S.W.2d 665, 677 (Tenn.1988) (opinion on petition to rehear), that is, whether the 1987 amendment to Tenn.Code Ann. § 36–5–101(a)(5) prevents both retroactive modification of child support orders and the interposition of traditional equitable defenses to the enforcement of such orders. We hold that it does and affirm the judgments against the delinquent father entered by the courts below.

### I. Factual Background

The facts in this case are sadly typical. The parties were divorced in 1973, and the mother secured custody of their three children, then aged one, four, and eight years. The father was out-of-state at the time of the divorce, and no support order was entered. When he returned to Tennessee in 1975, however, the mother secured a child support order requiring him to pay to the court clerk one-half of his income, up to a maximum of $50.00 per week, for the support of his minor children. He was also ordered to file periodic reports concerning his income.

The father initially made a few payments to the clerk's office. The record indicates that the last payment was made in June of 1975. He exercised his visitation privileges erratically.

The mother and three children subsequently left Nashville and lived in North Carolina for a period of several years. The father contends that he was thus prevented from seeing his children. The mother counters that he made no effort to get in touch with them. After she moved back to Nashville, the mother contacted the children's father, seeking support payments and offering visitation. Again, his performance was erratic, although he did contribute some money directly to the children's mother in the form of money orders. By late 1985 or early 1986, however, all contact between father and children was lost.

In March 1988, the mother filed a petition for contempt in Circuit Court and asked for a judgment for child support arrearages in the amount of $33,555.00. The father counterfiled for contempt,

claiming that he had been denied visitation and asking for forgiveness of the arrearages. The trial judge ultimately held that the father (but not the mother) was in contempt of court and ordered him to pay $27,100 in arrearages. That amount took into account a period of approximately two years, from 1975 to 1977, when the father was purportedly unemployed because of a job-related injury. The trial court recognized that if the father had no income during this period of time, he was not responsible for making child support payments under the terms of the 1975 order, which obligated him to pay a percentage of his income rather than a fixed amount of money per week.

On appeal, the father continues to seek modification of the trial court's order, raising various equitable defenses to enforcement such as the doctrine of unclean hands, laches, estoppel, waiver, and acquiescence. He also claims error in the trial court's failure to "pro-rate, both prospectively and as to arrearages, the father's child support obligation according to the emancipation of the two elder children," who had both reached the age of 18 by the time of the 1988 judgment against him.

The latter proposition requires little by way of response and resolution. The trial judge found that as the older two children progressively reached majority, the needs of the remaining minor child(ren) were fully sufficient to require weekly support payments in the amount of $50.00. There is no legal basis to disturb this factual finding. The more significant questions are legal: whether the order is subject to reduction under circumstances of this case, and, if not, whether there are any available defenses to the judgment based upon the equitable doctrines invoked on the father's behalf.

### II. Legal Background

Prior to its amendment, Tenn.Code Ann. § 36–5–101 permitted modification, but "only upon a specific written finding that the obligor was unable to pay the full amount of such allowance through no intentional fault of his or her own *and* that

the facts of the case require such a modification retroactively in order to meet the ends of justice." T.C.A. § 36–5–101 (Supp. 1986) (emphasis added). In 1986, Congress amended 42 U.S.C. § 666 (Supp.1990), which prescribes requirements for "improv[ing the] effectiveness of child support enforcement." The federal statute, as amended, provides that in order to receive federal assistance, each state must utilize procedures which guarantee that a child support payment is:

> (A) a judgment by operation of law, with full force, effect, and attributes of a judgment of the State, including the ability to be enforced,
>
> (B) entitled as a judgment to full faith and credit in such State and in any other State, and
>
> (C) not subject to retroactive modification by such State or by any other State.

42 U.S.C. § 666(a)(9) (Supp.1990).

Faced with the possible loss of millions of dollars in federal assistance because of the existing retroactive modification provision in Tenn.Code Ann. § 36–5–101, the Tennessee legislature amended that statute in 1987 to track the provisions of the new federal act, as follows:

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. Further, such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

Tenn.Code Ann. § 36–5–101(a)(5) (Supp. 1989).

The legislative history of this amendment reflects the General Assembly's clear understanding that as a result of legislative action to bring Tennessee law in line with the federal requirement, the courts of this state would lose their ability to forgive past arrearages in child support cases (but not the discretion to determine how and when the past due amounts were to be paid). Tennessee House Judiciary Committee hearing, March 3, 1987; Tennessee Senate Judiciary Committee hearing, March 3, 1987.

The new amendment became effective March 27, 1987. It has since been held to prevent the reduction of child support arrearages in several unreported decisions of the Tennessee Court of Appeals. We agree with these rulings. The language of the 1987 amendment could not be more clear. Retroactive modifications are plainly unauthorized; prospective modifications can be made, but only after notice as provided in subsection (a)(5). Hence, the trial court in this case could not reduce amounts that accrued prior to the filing of the father's 1988 cross-petition, even those amounts that became due prior to the effective date of the amendment.

This case is thus distinguishable from *Hoyle v. Wilson,* 746 S.W.2d 665. There we reviewed an action brought under the Uniform Reciprocal Enforcement of Support Act, T.C.A. §§ 36–5–201 et seq., in which the trial court disallowed arrearages that had accumulated during a two-year period when the mother, as custodial parent, took the children to Oklahoma without the non-custodial parent's knowledge and with the specific intent to defeat the father's visitation rights. The record further indicated that the father had resumed payments, voluntarily, as soon as he discovered the children's whereabouts.

We noted in *Hoyle v. Wilson* that many of our sister states have refused fully to enforce child support judgments under such circumstances, and we concluded that forgiveness was appropriate under the facts of the case. Of course, then-existing Tennessee law did not prevent such a result. Indeed, in *Hoyle v. Wilson,* existing statutory provisions were entirely consistent with retroactive modification. As noted above, Tenn.Code Ann. § 36–5–101 permitted reduction of arrearages when the obligor was "unable to pay through no fault of his own" and when retroactive modification was necessary "to meet the ends of justice."

Those provisions are conspicuously absent from the provision in § 36–5–101(a)(5), which now controls this case. The 1987 amendment specifically bars retroactive modification and puts the burden on the obligor to come into court and seek any current or prospective relief to which he may be entitled, by means of a formal court order. To permit the interposition of traditional equitable defenses to the enforcement of child support orders would obviously defeat the very purpose of the amendment, by creating a situation where exceptions could easily swallow up the rule.

In this case, for example, the father insists that the mother comes into court with unclean hands because her conduct prevented him from exercising his visitation rights with the children. He also argues that because of her failure to seek enforcement of the child support order during the 13–year period prior to the filing of her petition in 1988, she should now be denied recovery based upon the doctrine of laches and the equitable principles of estoppel, waiver and acquiescence.

This argument is not only inconsistent with the new provisions in subsection (a)(5), but it also overlooks the weight of existing case law on the responsibility of parents to support their children. While a child support payment goes, directly or indirectly, to the custodial parent or guardian of a child, the purpose of the payment is to fulfill the non-custodial parent's obligation to contribute to the *child's* support. *Hester v. Hester*, 59 Tenn.App. 613, 620, 443 S.W.2d 28, 31 (1968). Hence, the custodial parent's conduct cannot extinguish the non-custodial parent's legal responsibility. Under well-recognized principles of Tennessee law, the obligation of support and the right of visitation are *both* intended for the benefit of the child, and the two are not interdependent.

Of course, if the custodial parent is not in compliance with a court order, or is not acting in the child's best interest, the non-custodial parent can and should seek review of the custodial parent's conduct in court, by means of a petition for contempt or the like. What the aggrieved parent is *not* permitted to do is to suspend support payments unilaterally and then seek to avoid the resulting arrearages.

We commend the efforts of our federal and state legislative bodies to ensure that the nation's children receive adequate parental support. The legislation at issue in this case should prove useful in reaching that goal. At the same time, we recognize that in some instances the effect of the statute may seem harsh, as it undoubtedly will to the non-custodial parent in this case. In order to avoid future misunderstandings, we recommend to the trial courts that they institute appropriate procedures to provide early notice of the result of a failure to meet obligations under a child support order. A trial judge might, for example, inform the obligor in open court of the potentially dire consequences of the failure to pay, or require submission prior to entry of a final judgment of an affidavit by the obligor indicating that he or she has been so informed by counsel. In court, as in life, an ounce of prevention may well prove equal to a pound of cure.

### III.  Conclusion

In summary, we hold that the 1975 order was not subject to retroactive modification and that equitable defenses cannot be raised as a bar to enforcement of the 1988 judgment. Given the legislative history of Tenn.Code Ann. § 36–5–101(a)(5), we reject the argument that by making every child support order "a judgment entitled to be enforced as any other judgment of a court of this state," the General Assembly intended to permit the use of equitable defenses to defeat the right of a child to receive parental support.

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.