IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 25, 2000 Session

## SANDRA E. RICE SILVERSTEIN v. WILLIAM RUSSELL RICE, JR.

**Direct Appeal from the Chancery Court for Madison County**
**No. 31263    George R. Ellis, Chancellor**

---

**No.  W1999-01336-COA-R3-CV - Filed October 20, 2000**

---

This is a suit  to enforce a past child support obligation.  The mother filed suit  against the father, seeking past due child support payments, health insurance premiums and medical costs for the parties' three minor children.  The trial court held for the mother, and granted her a judgment for the child support arrearages, health insurance and medical costs, attorney's fees and pre-judgment interest on the child support arrearages.  The father appeals, arguing, *inter alia*,  that the trial court erred by failing to prorate his child support obligation as each child attained majority.  We affirm, holding that the trial court was not required to prorate the child support obligation as each child attained majority, because the child support award was a lump sum for all of the children and the amount was below the guideline amount for the remaining minor children.

**Tenn. R. App. P. 3; Judgment of the trial court is affirmed and remanded**.

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. AND ALAN E. HIGHERS, J., joined.

Harold Johnson, Jackson, Tennessee for the Appellant, William Russell Rice, Jr.

Larry S. Banks, Brownsville, Tennessee, for the Appellee, Sandra E. Rice Silverstein.

## OPINION

This is a suit to enforce a past child support obligation.  Plaintiff/Appellee Sandra E. Rice Silverstein ("Mother") and Defendant/Appellant William Russell Rice, Jr. ("Father") were divorced on April 22, 1980.  The parties' final decree of divorce incorporated their marital dissolution agreement ("agreement") , in which they agreed, *inter alia*, that Mother would receive sole custody of the parties' three minor children, then ages ten, six, and four, and that Father would pay the lump sum of $850 per month to Mother as support for the  children.  Father also agreed to pay medical insurance premiums for the children, as well as all necessary and reasonable medical, dental and hospitalization expenses that were not covered by insurance.

The parties' eldest child Alyson attained majority in December 1987, their son William reached majority in July 1991 and their youngest child, Eliza, attained majority in May 1993. However, Father ceased making child support payments in September 1991. On April 16, 1998, Mother filed a lawsuit against Father, alleging that he had failed to pay the children's insurance premiums or to reimburse Mother for the children's medical expenses, and that he was $17,850 in arrears on his child support payments. Mother asked the trial court to find Father in willful contempt of the divorce decree, and sought to suspend Father's law license until the arrearage was paid. Mother also sought attorney's fees and costs. In his answer, Father asserted that he had been unable to meet the child support obligation because of a decline in his law practice, and alleged that Mother had orally released him from the obligation to provide insurance coverage for the children. Father stated that he was "presently unable to comply with the provisions of the Marital Dissolution Agreement incorporated in the final decree," and denied that he was in willful contempt of the court's orders.

A hearing on the matter was held on October 6, 1998. Mother testified that Father had been slow in making his child support payments at various times in the past, but entirely quit paying in September 1991. Mother also testified that Father had failed to pay the children's insurance premiums and medical bills, as he had been ordered to do in the parties' final decree of divorce. Mother introduced into evidence two letters from Husband in which he acknowledged his child support debt. The second letter, dated July 13, 1993, and signed by Husband, reads:

> To Whom It May Concern–This is to certify that I owe Sandra Silverstein the sum of $17,425.00 which represents child support payments payable $850.00 per month being 20 ½ months.

Mother also introduced into evidence a number of the children's medical bills, as well as various insurance statements detailing insurance premiums for the children. Mother testified that she paid all of the medical bills, with no assistance from Father, and that Father failed to pay the premiums for health insurance for the children.

Mother's current husband, Fred Silverstein ("Silverstein") testified that the children had been covered under his family group insurance plan, but that there had been additional cost to include them in that plan. He stated that Father never paid that additional cost. Silverstein also testified that Father, in several conversations with him, had acknowledged the debt.

Father testified that, as far as he knew, he had paid all medical expenses when he was presented with the bills. He argued that there was no additional cost to have the children covered under Silverstein's family insurance plan. Father acknowledged that he quit paying the $850 per month in child support in September 1991. He testified that, during that time, his law practice had suffered a tremendous loss of business. Father also testified that, during that same period, he had been paying half of his older children's college tuition. As a result, he was unable to meet his child support obligation. Father admitted that he had been under no legal obligation to pay the college tuition.

Father argued that his child support obligation of $850 per month should have been reduced pro rata by one-third as each of the older two children reached the age of eighteen. Consequently, Father argued that he should be given credit for overpayment of child support during the months in which he paid the full amount after some of the children were no longer minors.

On January 21, 1999, the trial court issued its findings of fact and conclusions of law. It found that Father owed $17,425 in back child support, $10,356 for premiums on health insurance, and $4500 for unpaid medical bills. The trial court noted that Father never petitioned for modification of his child support obligation, and that, during the time in which the two younger children were minors, Father's child support obligation was $550 less than Father would have been required to pay under the child support guidelines. Consequently, the trial court concluded that Father was not entitled to proration of his child support payments. The trial court granted Mother a judgment for $32,281.00, the total of the back child support, insurance premiums, and unpaid medical bills. In addition, the trial court awarded Mother ten per cent per annum pre-judgment interest on the child support arrearages dating from Father's letter of July 13, 1993, in which he acknowledged his child support obligation. Father was ordered to pay the court costs, as well as $2,491.05 for Mother's attorney's fees. The trial court denied Mother's request to hold Father in contempt and suspend his license to practice law. The trial court found that it had no authority to enforce by contempt child support arrearages premised on an award entered prior to July 1, 1994, based on to the Supreme Court's decision in *Clinard v. Clinard*, No. 01-S-01-9502-CV00021, 1995 WL 563858, (Tenn. Sept. 25, 1995), *reh'g denied* Nov. 8, 1995. From this order, Father and Mother now appeal.

On appeal, Father raises essentially five issues: 1) whether the trial court erred by denying him credit for overpayment of child support, based on a proration of the child support owed as each child attained majority; 2) whether the trial court erred by refusing to apply the doctrine of laches to Mother's claim for child support arrearages, or to find that Mother waived her claim for the child support arrearages; 3) whether the preponderance of the evidence supports the trial court's finding that Father owed $10,356 and $4,500 for the children's insurance premiums and unpaid medical bills, respectively; 4) whether the trial court erred in awarding pre-judgment interest; and 5) whether the trial court erred in awarding Mother attorney's fees. Mother appeals the trial court's refusal to suspend Father's law license until the arrearages are paid.

Our review of this case is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual findings, unless the evidence preponderates otherwise. Tenn.R.App.P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Our review of the trial court's conclusions of law is *de novo* on the record, with no presumption of correctness. *Id.*

Father argues first that he was entitled to an automatic proration of his child support obligation as each child reached majority. In support, Father relies upon *Clinard v. Clinard*, No. 01-S-01-9502-CV00021, 1995 WL 563858, (Tenn. Sept. 25, 1995), and Tennessee Code Annotated

Section 36-5-101(a)(1). By prorating the child support award by one-third as each of the two older children reached the age of eighteen, and subtracting that amount from the prorated amount that he owed for the twenty-month period in which he made no payment, Father calculates that he overpaid his child support by approximately $7,939. Mother maintains that the trial court did not err by finding that Father was not entitled to an automatic proration of his child support obligations, citing *Bell v. Bell*, No. 01A01-9511-CH-00493, 1996 WL 548150 (Tenn. Ct. App. Sept. 25, 1996).

In *Clinard v. Clinard*, the Tennessee Supreme Court held that proration of an obligor parent's child support obligation as each child reaches majority is not retroactive modification of a child support award. 1995 WL 563858 at *2. Recognizing that proration "derives from the legal principle that parents generally owe no duty to support children who have attained the age of majority," the Court affirmed the trial court's application of proration, even though the obligor parent filed no petition at the time that each child reached majority. *Id.*

In *Bell v. Bell*, as in the case at bar, the father was ordered to pay a lump sum of child support for his three minor children. 1996 WL 548150 at *1. He continued to pay that amount after his oldest child attained the age of majority. *Id.* Four years later, however, the father filed a petition asking that he be given credit for overpayment of child support. *Id.* The trial court denied the petition. On appeal before this Court, the father argued that Tennessee Code Annotated Section 36-5-101 (a)(1) authorizes the automatic proration of child support payments when a child reaches the age of majority. Thus, the father argued, his child support obligation should have been automatically reduced by one-third at the time that his eldest child reached eighteen years of age. *Id.* This argument was rejected:

> [T]here was no determination that each child was entitled to a given amount per month; rather, the total support for the three children was $400 per month. As in *Clinard v. Clinard*, No. 01-S-01-9502-CV00021, 1995 WL 563858 (Tenn. Sept. 25, 1995), had the trial court applied proration in this case, it would not be deemed a prohibited retroactive modification of the child support obligation. However, as established in *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn. 1991), the trial court is not *obligated* to apply proration where circumstances justify the original total amount of support for the remaining minor children.

*Id.* at * 2. In *Bell*, there was no determination that each child was entitled to a given amount per month; rather, the support award was a lump sum. Moreover, the amount of the lump sum payment was justified under the child support guidelines for the remaining minor children. Consequently, the trial court's decision to decline proration was affirmed. *Id.* at *2.

In this case, as in *Bell*, the amount of the child support award was given as a lump sum, rather than as a specific amount per child each month. Further, the trial court found, based on Father's income during the period in question, that the child support guidelines called for payment of $1400 per month for the two younger children, rather than $850. Under these circumstances, we

-4-

find no error in the trial court's refusal to apply proration to Father's child support obligation. The trial court is affirmed on this issue.

Father also argues that the trial court erred in refusing to find that Mother waived her claim for the child support arrearages, or to apply the doctrine of laches to the claim for child support arrearages. Father notes the passage of time before Mother filed her petition regarding the child support arrearage, but fails to note the Tennessee statute providing that judgments for child support are "enforceable without limitation as to time." Tenn. Code Ann. § 36-5-103(g) (Supp. 1999). He points to no facts warranting a finding of waiver or application of the doctrine of laches. This argument is without merit.

Father next argues that the preponderance of the evidence does not support the trial court's finding that he owed $10,356 in insurance premiums and $4,500 for medical costs not covered by insurance. Father contends that he paid Mother all bills presented to him, and that Mother failed to prove that he owed these amounts.

After reviewing the evidence on this issue, including the testimony of Mother and Silverstein and the documentary evidence such as copies of medical bills and insurance statements relating to the children, we find that the evidence was sufficient to support the trial court's finding. The trial court's decision on this issue is affirmed.

Father also argues that the trial court erred by awarding Mother pre-judgment interest on the child support arrearages. He asserts that pre-judgment interest in this case is inequitable because of the length of time that expired from the date the last child attained majority, in 1993, until Mother filed her petition, in 1998. He also argues that pre-judgment interest in this case is inequitable because he paid half of the children's college tuition and other expenses.

The award of prejudgment interest lies within the sound discretion of the trial court. ***Brandt v. Bib Enterprises,*** Ltd., 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998), *appeal denied* Mar. 8, 1999, *reh'g denied* Sept. 23, 1999; ***Clinard***, 1995 WL 563858 at * 4. The trial court's decision will not be reversed unless it constitutes an abuse of discretion. ***Brandt***, 986 S.W.2d at 595.

In this case, the record shows that in 1993, the year the parties' youngest child reached majority, Father acknowledged in writing that he owed the amount of child support arrearages awarded, $17,425. There was testimony that the arrearage was discussed repeatedly with Father, and that Father repeatedly assured payment upon receipt of legal fees in pending cases. However, no payment was made. Moreover, Father's voluntary payment of half of his children's college costs and other expenses did not relieve him of his obligation to pay the acknowledged child support arrearage. Under these circumstances, we cannot conclude that the trial court's award of pre-judgment interest was inequitable. The trial courts's decision on this issue is affirmed.

As Father's last issue on appeal, he argues that the trial court erred by awarding Mother attorney's fees. Father contends that, once all three children attained majority, the trial court no

longer had authority to award attorney's fees to Mother to collect the arrearage. In support of this assertion, Father again cites **Clinard**, quoting the Court's statement that when a child attains majority, "unpaid child support payments 'take on the form of a debt and become enforceable as money judgments.'" **Clinard**, 1995 WL 563858 at * 3 (quoting **Kuykendall v. Wheeler**, 890 S.W.2d 785, 786-87 (Tenn. 1994)). Based on **Clinard**, Father argues that once children reach majority, their support is no longer an issue, and there is no statutory authority for an award of attorney's fees for collection of a judgment for child support arrearage. In the alternative, Father argues that the award of attorney's fees in this case was an abuse of discretion.

Father's reliance on **Clinard** is misplaced. In **Clinard**, the Court addressed the means by which a trial court can enforce a child support debt. It concluded that once the children have attained majority, a trial court may enforce child support payments only by use of those means statutorily prescribed for the enforcement of other money judgments, and may not enforce by means of contempt or wage assignment. **Id.** **Clinard** did not address the award of attorney's fees in an action to collect arrearage after the children reach majority.

Tennessee Code Annotated Section 36-5-103(c), provides that "the plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, . . . both upon the original divorce hearing *and* at *any* subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court." Tenn. Code Ann. § 36-5-103(c) (Supp. 1999)(emphasis added). Thus, the trial court in this case had statutory authority to award attorney's fees to Mother. In addition, Father's repeated failure to meet his court ordered child support obligations forced Mother to file suit to collect. Under these circumstances, we cannot conclude that the award of attorney's fees to Mother was an abuse of discretion.

In the single issue raised by Mother on appeal, she argues that the trial court erred in declining her request that Father's law license be suspended until the child support arrearage is paid. Mother argues on appeal for the retroactive application of the 1994 amendment to Tennessee Code Annotated Section 36-5-101(k), which grants a court power to enforce an order of payment for child support arrearages by contempt, and Section 36-5-101(o), which provides for revocation of a license to enforce a child support obligation. Mother contends that the statute is remedial, rather than punitive, and can be applied retroactively to this case. However, we need not address Mother's retroactivity argument. Under Section 36-5-101(o), the trial court may suspend the obligor parent's license, but such suspension is not mandated. Under the facts of this case, we cannot conclude that the trial court erred in declining Mother's request for suspension of Father's law license until the child support arrearage is paid. The trial court's decision on this issue is affirmed.

Mother also seeks her attorney's fees for this appeal. We find this request well-taken, and remand to the trial court for a determination of Mother's reasonable attorney's fees for this appeal.

The decision of the trial court is affirmed in all respects, and the case is remanded to the trial court for a determination of Mother's reasonable attorney's fees incurred for this appeal. Costs are taxed against the Appellant, William Russell Rice, Jr., and his surety for which execution may issue, if necessary.

_____

HOLLY K. LILLARD, JUDGE