IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## JOHNNA LEA HAYES (BEUERLEIN) v. JEFF C. HAYES

**Direct Appeal from the Chancery Court for Haywood County**
**No. 10956     George R. Ellis, Chancellor**

_____

**No. W1999-00445-COA-R3-CV - Decided July 12, 2000**

_____

This appeal arises from a dispute between Plaintiff Johnna Lea Hayes (Beuerlein) and Defendant Jeff C. Hayes regarding the amount of Mr. Hayes' child support obligation and the enforcement of a promissory note executed by Ms. Beuerlein in conjunction with the parties' divorce. The trial court found (1) that Mr. Hayes has an annual income of $64,139.00, (2) that Mr. Hayes' child support obligation is $1,221.00 per month but that this amount should be reduced to $621.00 per month until Ms. Beuerlein's debt under the promissory note is satisfied, (3) that Mr. Hayes' child support arrearage is equal to $14,940.00, (4) that Ms. Beuerlein's debt under the promissory note is equal to $39,569.85, (5) that, subtracting Mr. Hayes' child support arrearage from Ms. Beuerlein's debt under the promissory note, the net amount that Ms. Beuerlein owes to Mr. Hayes is $24,665.85 plus ten percent (10%) interest, and (6) that each party shall pay his or her own attorney's fees. For the reasons set forth below, the ruling of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in part; Reversed in part; and Remanded.**

FARMER, J., delivered the opinion of the court, in which HIGHERS, J., and LILLARD, J., joined.

L. L. Harrell, Jr., Trenton, Tennessee, for the appellant, Jeff C. Hayes.

Nancy S. Nelson, Jackson, Tennessee, for the appellee, Johnna Lea Hayes (Beuerlein).

### OPINION

Mr. Hayes and Ms. Beuerlein are the parents of two minor children, namely Harrison, born December 9, 1988, and Katie, born June 13, 1990. At the time of the parties' divorce in February of 1995, the children were placed in the parties' joint custody. The parties' marital dissolution agreement provided, however, that the children would reside primarily with Ms. Beuerlein and that Mr. Hayes was obligated to pay child support in the amount of $600.00 per month. On March 4, 1997, Ms. Beuerlein filed a motion requesting an increase in child support and a judgment in the amount of Mr. Hayes' alleged child support arrearage. In his answer to the petition, Mr. Hayes denied that he was in arrears with respect to his child support obligation. On August 15, 1997, Mr.

Hayes filed a petition seeking a judgment against Ms. Beuerlein for amounts due under a promissory note executed by Ms. Beuerlein in conjunction with the parties' divorce. After a hearing on these matters on March 3, 1999, the trial court found (1) that Mr. Hayes has an annual income of $64,139.00, (2) that Mr. Hayes' child support obligation is $1,221.00 per month but that this amount should be reduced to $621.00 per month until Ms. Beuerlein's debt under the promissory note is satisfied, (3) that Mr. Hayes' child support arrearage is equal to $14,940.00, (4) that Ms. Beuerlein's debt under the promissory note is equal to $39,569.85, (5) that, subtracting Mr. Hayes' child support arrearage from Ms. Beuerlein's debt under the promissory note, the net amount that Ms. Beuerlein owes to Mr. Hayes is $24,665.85 plus ten percent (10%) interest, and (6) that each party shall pay his or her own attorney's fees. An order reciting this ruling, which added that Mr. Hayes' child support obligation of $1,221.00 per month is retroactive to March 4, 1997, was entered by the trial court on April 9, 1999. This appeal by Mr. Hayes followed.

The issues raised by Mr. Hayes on appeal, as we perceive them, are as follows:

I.      Did the trial court err in determining that Mr. Hayes has an annual income of $64,139.00?

II.     Did the trial court err in finding that Mr. Hayes' child support obligation is $1,221.00 per month, that this obligation is retroactive to March 4, 1997, and that Mr. Hayes' child support arrearage is $14,940.00?

III.    Did the trial court err in failing to award Mr. Hayes a judgment in the amount of $39,569.85 (the amount that he is owed by Ms. Beuerlein under the promissory note) plus interest and attorney's fees and in failing to allow Mr. Hayes to demand payment of the judgment by Ms. Beuerlein?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness and thus we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

### *Income and Child Support*

Mr. Hayes first argues that the trial court erred with respect to the calculation of his annual income. Mr. Hayes testified at trial that he is self employed but that he works through Hoyt Hayes, Jr. Construction ("Hayes Construction"), which is a company owned by his brother. He receives a flat salary from Hayes Construction in the amount of $2,000.00 per month (or $24,000.00 per year). Additionally, through his attorney, Mr. Hayes conceded at trial that he receives interest income of $672.00 per year, income from a partnership in the amount of $4,831.00 per year, and income from

some rental property in the amount of $12,548.00 per year. Thus, Mr. Hayes argued at trial and argues on appeal that his annual income is $42,051.00.

In calculating Mr. Hayes' annual income, the trial court took into consideration certain expenses of Mr. Hayes that are paid by Hayes Construction. Mr. Hayes lives and maintains a home in Brownsville, Tennessee. In the course of his employment with Hayes Construction, however, he is required to travel out of town during the week and on some weekends. When Mr. Hayes is out of town, he uses a credit card provided by Hayes Construction to pay for his lodging, meals, and transportation expenses. It is agreed by the parties that the amount of Mr. Hayes' lodging, meals, and transportation expenses while he is working out of town for Hayes Construction is approximately $50.00 per day. Multiplying this amount by five days per week, four weeks per month, and twelve months per year, the total amount paid by Hayes Construction for Mr. Hayes' lodging, meals, and transportation expenses is $12,000.00 per year.[1] Hayes Construction also pays to Mr. Hayes $834.00 per month (or $10,008.00 per year) as reimbursement for payments made by Mr. Hayes for the lease of two trucks, a Ford F-150 and a Ford F-250. One of these trucks is leased by Mr. Hayes for $480.00 per month (or $5,760.00 per year) while the other truck is leased by Mr. Hayes for $354.00 per month (or $4,248.00 per year). Additionally, one of the leased trucks is used exclusively by Mr. Hayes for personal and business purposes while the other truck is used as a service vehicle for Hayes Construction. The trial court determined that Mr. Hayes' annual income is $64,139.00 rather than $42,051.00 as suggested by Mr. Hayes. Thus, the court included in Mr. Hayes' annual income the $12,000.00 per year paid by Hayes Construction for Mr. Hayes' lodging, meals, and transportation expenses and the $10,008.00 per year paid to Mr. Hayes by Hayes Construction for the lease of the two trucks.[2]

Section 36-5-101 of the Tennessee Code Annotated provides that, when ruling on matters of child support, the court is instructed to follow the guidelines promulgated by the Tennessee Department of Human Services. *See* Tenn. Code Ann. § 36-5-101(e)(2) (Supp. 1999); ***Herrera v. Herrera***, 944 S.W.2d 379, 386 (Tenn. Ct. App. 1996). Chapter 1240-2-4-.03 of these guidelines provides in pertinent part as follows:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security

---

[1]Our calculation assumes, as did the calculation of the trial court, that Mr. Hayes is out of town working for Hayes Construction on every Monday through Friday of the calendar year. Neither party takes issue with the trial court's use of this assumption.

[2]We recognize that the sum of $42,051.00, $12,000.00, and $10,008.00 is $64,059.00 rather than $64,139.00. There is nothing in the record, however, that explains this $80.00 discrepancy in the trial court's calculations.

benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self employment. ***Income from self employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional, excessive travel, excessive car expenses, or excessive personal expenses, etc., should not be considered reasonable expenses. "In kind" remuneration must also be imputed as income, i.e., fringe benefits such as a company car, the value of on-base lodging and meals in lieu of BAQ and BAS for a military member, etc.***

Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (1994)(emphasis added).

After reviewing the language of Chapter 1240-2-4-.03(3)(a), we agree with Mr. Hayes that the trial court erred when calculating his income. First, we do not think that the trial court should have included as income the lodging, meals, and transportation expenses that are paid by Hayes Construction. These expenses are incurred by Mr. Hayes apart from and in addition to the cost of maintaining his home in Brownsville. Thus, the payment of these expenses by Hayes Construction does not result in any significant benefit to Mr. Hayes. It is undisputed that Mr. Hayes is self employed. Chapter 1240-2-4-.03(3)(a) provides that income from self employment includes all income less the reasonable expenses of producing the income. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (1994). Chapter 1240-2-4-.03(3)(a) further provides that the term "reasonable expenses" does not include excessive travel, suggesting that income from self employment should be reduced by the expenses of travel if the travel is not excessive and the travel is necessary to produce the income. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (1994). There is nothing in the record suggesting that $50.00 per day for lodging, meals, and transportation expenses incurred while out of town on business is unreasonable or that the travel of Mr. Hayes is in any way excessive. Thus, if Mr. Hayes had chosen not to use the credit card provided by Hayes Construction and had instead claimed these lodging, meals, and transportation expenses as the expenses of producing the income that he receives from Hayes Construction, it is clear that Chapter 1240-2-4-.03(3)(a) would allow for a reduction when calculating his income. ***See Farmer v. Farmer***, No. 01-A-01-9411-CH-00548, 1995 WL 458985, at *2-3 (Tenn. Ct. App. Aug. 4, 1995)(holding that the evidence did not preponderate against the trial court's finding that the father's monthly income for purposes of calculating his child support obligation was equal to $5,000.00, the amount that he withdrew each month from his business, minus $1,250.00, the amount of travel expenses that he incurred each month in connection with the business).[3] Ms. Beuerlein notes that Chapter 1240-2-4-.03(3)(a) specifically states that income also includes "in kind" remuneration such as "the value of

---

[3]Pursuant to Rule 4 of the Rules of the Tennessee Supreme Court, the unreported cases cited in this opinion are of only persuasive authority as to the issues raised by the parties in the case at bar. *See* Tenn. Sup. Ct. R. 4(H)(1) (amended 1999).

on-base lodging and meals in lieu of BAQ and BAS for a military member." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (1994). The nature of on-base lodging and meals, however, is distinctly different from the nature of lodging and meals associated with travel. An individual that is in the military receives lodging and meals, or an allowance in lieu thereof, as part of his or her compensation. When an individual lives in on-base lodging, there is no need for that individual to also maintain a separate off-base residence. In the case at bar, Mr. Hayes incurred lodging, meals, and travel expenses, as well as the expense of maintaining his home in Brownsville, during the days that he was out of town and working for Hayes Construction. Thus, unlike an individual in the military who lives in on-base lodging, Mr. Hayes did not receive compensation as a result of the payment of his travel expenses by Hayes Construction. We therefore conclude that the language in Chapter 1240-2-4-.03(3)(a) relied upon by Ms. Beuerlein does not require us to hold that the payment of Mr. Hayes' lodging, meals, and transportation expenses by Hayes Construction resulted in income to Mr. Hayes.

We also do not think that the trial court should have included as income the amount that Hayes Construction pays to Mr. Hayes every month in connection with its use of one of the trucks leased by Mr. Hayes. It is undisputed that this truck is used exclusively by Hayes Construction as a service vehicle. Mr. Hayes does not receive any benefit from the monthly payments made to him by Hayes Construction for the use of this truck, as the entirety of these payments is used by Mr. Hayes to satisfy his obligations under the lease that applies to this vehicle. We therefore conclude that the payments made to Mr. Hayes by Hayes Construction to reimburse him for the lease payments made by Mr. Hayes in connection with his lease of the service vehicle should not be considered when calculating Mr. Hayes' annual income. As stated above, Mr. Hayes also leases a second truck which is used exclusively by Mr. Hayes for both personal and business purposes. We agree with Ms. Beuerlein that the trial court properly included as income the amount that Hayes Construction pays to Mr. Hayes every month in connection with this vehicle. Chapter 1240-2-4-.03(3)(a) provides that income includes the value of fringe benefits such as the use of a company car. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (1994). The truck used exclusively by Mr. Hayes is equivalent to a company car in that he is reimbursed for the cost of leasing this truck and is permitted to use the truck for both personal as well as business purposes. We therefore conclude that the amount paid each month to Mr. Hayes by Hayes Construction to reimburse him for the cost of leasing this truck must be considered when calculating Mr. Hayes' annual income.[4]

Mr. Hayes also complains that the trial court should not have increased his child support

---

[4]Ms. Beuerlein testified at trial that Mr. Hayes leases a Ford F-150 truck and a Ford F-250 truck and that the lease payments with respect to these trucks is $480.00 per month and $354.00 per month. There is nothing in the record, however, from which we can determine which of these trucks corresponds to which of these lease payments. Additionally, there is nothing in the record identifying which of the trucks was used as a service vehicle by Hayes Construction and which of the trucks was used exclusively by Mr. Hayes. We therefore are unable to recalculate Mr. Hayes' annual income and must remand the cause so that the trial court can make findings of fact regarding these matters. *See* Tenn. Code Ann. § 27-3-128 (1980).

obligation retroactively to March 4, 1997, the date on which Ms. Beuerlein filed her petition requesting an increase in child support, without also requiring Ms. Beuerlein to pay interest on the amount of the payments under the promissory note that she failed to make during the two years that elapsed between the filing of Ms. Beuerlein's petition on March 4, 1997 and the hearing that occurred on the petition on March 3, 1999. Section 36-5-101 specifically provides that an order for child support "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." Tenn. Code Ann. § 36-5-101(a)(5) (Supp. 1999). This language suggests that an order of child support is subject to modification as to any time period after the filing of an action for modification. *See Brooks v. Brooks*, 992 S.W.2d 403, 408 (Tenn. 1999)(providing that the child support ordered by the court shall be effective as of the date that the mother filed her petition for modification); *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991)(recognizing that, under section 36-5-101(a)(5), modification of a child support order may be made only after the commencement of an action for modification and the giving of notice). We therefore conclude that, because Ms. Beuerlein filed a petition requesting an increase in child support on March 4, 1997, it was within the trial court's discretion to apply its ruling retroactively to that date. With respect to Mr. Hayes' contention that the trial court should have also required Ms. Beuerlein to pay interest on the amount of the payments that she failed to make to Mr. Hayes during the pendency of her petition, we think that this matter was also within the discretion of the trial court. Almost two years elapsed between the filing of Ms. Beuerlein's petition and the hearing that occurred on the petition. This delay was due in part to a dispute that arose between the parties during the course of discovery. Ms. Beuerlein submitted a series of interrogatories to Mr. Hayes regarding his income. Mr. Hayes refused to answer the interrogatories, prompting Ms. Beuerlein to file a motion to compel discovery. The trial court granted the motion and ordered Mr. Hayes to fully respond to Ms. Beuerlein's interrogatories. Ms. Beuerlein subsequently filed a petition for contempt alleging that Mr. Hayes had failed to comply with the court's order. After a hearing on the petition, the trial court entered an order once again directing Mr. Hayes to fully respond to the interrogatories submitted to him by Ms. Beuerlein. Mr. Hayes' failure to respond to Ms. Beuerlein's interrogatories and failure to comply with the trial court's order compelling discovery served to delay the resolution of Ms. Beuerlein's petition requesting an increase in child support. Under these circumstances, we conclude that the trial court did not abuse its discretion in not requiring Ms. Beuerlein to pay interest on the amount of the payments under the promissory note that she failed to make to Mr. Hayes during the pendency of her petition.

### *Promissory Note*

At the time of their divorce, the parties agreed that Mr. Hayes would pay child support to Ms. Beuerlein in the amount of $600.00 per month. The parties further agreed that Ms. Beuerlein would repay Mr. Hayes for the cost of her education, which was obtained during the marriage. Consistent with this agreement, Ms. Beuerlein executed a promissory note under which she was required to make installment payments to Mr. Hayes in the amount of $584.77 per month until this obligation was satisfied. It was decided by the parties that, instead of writing two separate checks each month, Mr. Hayes would remit a check to Ms. Beuerlein each month in the amount of $15.23, the difference

between Mr. Hayes' $600.00 per month child support obligation and Ms. Beuerlein's $584.77 per month obligation under the promissory note. In his petition, Mr. Hayes sought a judgment for $39,569.85, the full amount remaining under the promissory note. The trial court did not grant a judgment to Mr. Hayes in that amount, but instead fashioned a payment arrangement similar to the one previously agreed to by the parties whereby Mr. Hayes would pay $621.00 of his $1,221.00 child support obligation to Ms. Beuerlein each month and the remaining $600.00 of this obligation would serve as a set-off against Ms. Beuerlein's indebtedness under the promissory note. Mr. Hayes argues on appeal that, instead of directing that a portion of his child support obligation should be applied toward the amount that Ms. Beuerlein owes him under the promissory note, the court should have awarded him a judgment for $39,569.85 and allowed him to demand payment of the judgment.

There is a split of authority among the different states regarding whether a court may order that a spouse's child support obligation should be off-set by a debt owed to the spouse by his or her former spouse. *See generally* Claudia Catalano, Annotation, ***Spouse's Right to Set Off Debt Owed By Other Spouse Against Accrued Spousal or Child Support Payments***, 11 A.L.R.5th 259 (1993). Although there are no reported opinions in Tennessee addressing this question, there are unreported opinions of this Court suggesting that such a payment arrangement is not favored. In ***Compton v. Compton***, No. 86-258-II, 1987 WL 8845 (Tenn. Ct. App. Apr. 1, 1987), the divorce court ordered Mr. Compton to pay $650.00 per month in alimony to Mrs. Compton. *See id.* at *1. During the months of June 1979 to June 1981, Mr. Compton made alimony payments of only $600.00 per month rather than $650.00 per month, resulting in an arrearage of $1,250.00. *See id.* at *1-2. Mr. Compton claimed, however, that this arrearage should be off-set by $2,007.00 in bills that he had paid for Ms. Compton. *See id.* This Court held that, because Mr. Compton paid Mrs. Compton's bills on his own and not at the request of Mrs. Compton, the amount of these bills could not serve as a set-off against Mr. Compton's alimony arrearage. *See id.* at *3. In ***Aubin v. Aubin***, No. 88-230-II, 1989 WL 9523 (Tenn. Ct. App. Feb. 10, 1989), the divorce court ordered Mr. Aubin to pay $70.00 in child support to Mrs. Aubin and ordered Mrs. Aubin to pay $6,000.00 to Mr. Aubin upon the sale of the parties' marital home. *See id.* at *1. After the sale of the home and the payment of the proceeds of the sale to Mr. Aubin, Mrs. Aubin still owed $1,678.75 to Mr. Aubin. *See id.* Consequently, the court reduced the amount of Mr. Aubin's child support obligation to $50.00 per week until the balance of Mrs. Aubin's debt to Mr. Aubin was satisfied, at which time Mr. Aubin's child support obligation would revert to its original amount of $70.00 per week. *See id.* at *1, 4. Because neither of the parties challenged the power of the court to order such a set-off payment arrangement, this Court did not discuss the matter on appeal. Finally, in ***Oliver v. Oczkowicz***, No. 89-396-II, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990), the trial court found that Mr. Oczkowicz owed $9,295.15 in back child support to Ms. Oliver but that he was entitled to a credit against his child support arrearage in the amount of $4,754.65, which included certain expenditures made by Mr. Oczkowicz for the benefit of the parties' children, certain expenses incurred by Mr. Oczkowicz in conjunction with his visitation with the children, and a personal loan that Mr. Oczkowicz had made to Ms. Oliver. *See id.* at *1-2. On appeal, this Court first concluded that Mr. Oczkowicz was entitled to off-set his child support arrearage by voluntary payments made by him for the children's necessaries that were not being provided by Ms. Oliver. *See id.* at *2. Additionally, however, we concluded that Mr. Oczkowicz was not entitled to off-set his child support arrearage by amounts

owed by Ms. Oliver to Mr. Oczkowicz that were unrelated to the child support order[5] because to allow such a set-off "would amount to requiring the children to pay the debts of the custodial parent." *Id.* at *2-3. Finally, this Court commented that the effect of its ruling was not to wipe out the amounts owed by Ms. Oliver to Mr. Oczkowicz but, rather, that Mr. Oczkowicz would "have to resort to the ordinary legal processes to collect the debt rather than taking it out of his child support obligation." *Id.* at *2.

The promissory note executed by Ms. Beuerlein provides for liquidation of Ms. Beuerlein's debt in the event of default, as follows: "In case said installments, or any of them, are not paid withing fifteen (15) days after same become due, the whole of said principal sum shall forthwith become due and payable at the option of the holder of this note." Based on this language in the promissory note, and consistent with this Court's ruling in *Oliver*, the trial court should not have ordered that $600.00 of Mr. Hayes' monthly child support obligation should be applied as a set off against Ms. Beuerlein's indebtedness to Mr. Hayes. Rather, the court should have granted a judgment to Mr. Hayes in the full amount owed to Mr. Hayes by Ms. Beuerlein under the promissory note. We therefore reverse the portion of the trial court's ruling providing for a set-off of Mr. Hayes' child support obligation against Ms. Beuerlein's personal debt to Mr. Hayes.

Mr. Hayes also requested in his petition that he be granted reasonable attorney's fees incurred in the prosecution of his claim against Ms. Beuerlein under the promissory note. The trial court did not grant this request but instead ruled that each of the parties shall pay his or her own attorney's fees. Mr. Hayes argues on appeal that this portion of the trial court's ruling was in error and that the court should have ordered Ms. Beuerlein to pay 15% of his attorney's fees.

The promissory note executed by Ms. Beuerlein provides that "[i]n the event of suit to enforce payment of this note, a reasonable additional sum shall be allowed as attorney's fees in such suit, together with all costs of collection and the interest, and be made a part of the judgment therein." Ms. Beuerlein testified at trial that, in April of 1997, Mr. Hayes began paying her $600.00 per month, the full amount of his child support obligation, rather than paying her $15.23 per month and off-setting the remaining $584.77 per month against the $584.77 per month that she was required to pay to Mr. Hayes under the promissory note. Despite the payment of Mr. Hayes' full child support obligation, Ms. Beuerlein did not make any payments to Mr. Hayes under the promissory note. Thus, Ms. Beuerlein was in default of the promissory note. Mr. Hayes filed a petition to enforce his rights under the promissory note. As noted above, the promissory note specifically provides for an award of reasonable attorney's fees incurred in enforcing payment of the note. We therefore conclude that the trial court should have awarded reasonable attorney's fees to Mr. Hayes. No proof was presented at trial regarding Mr. Hayes' attorney's fees. On remand, the trial court is instructed to determine the amount of attorney's fees that were incurred by Mr. Hayes in enforcing his rights under the

[5]We recognized in *Oliver* that this conclusion was apparently inconsistent with *Aubin* but found that *Aubin* was distinguishable from *Oliver* in that no issue was raised on appeal in *Aubin* regarding the power of the court to order a set-off of the parties' personal and child support obligations. *See Oliver*, 1990 WL 64534, at *2.

promissory note, as opposed to those incurred in defending Ms. Beuerlein's petition for an increase in child support, and assess a reasonable amount of these fees against Ms. Beuerlein.

### *Conclusion*

Based on the foregoing, we reverse the trial court's calculation of Mr. Hayes' annual income, the court's failure to grant a judgment to Mr. Hayes in the full amount of the outstanding amount owed to him by Ms. Beuerlein under the promissory note, and the court's refusal to grant attorney's fees to Mr. Hayes. In all other respects, however, the ruling of the trial court is affirmed. On remand, the court is instructed to recalculate Mr. Hayes' income without regard to the lodging, meals, and transportation expenses of Mr. Hayes that are paid by Hayes Construction and the monthly payments received by Mr. Hayes from Hayes Construction associated with the truck leased by Mr. Hayes that is used by Hayes Construction as a service vehicle. Because a recalculation of Mr. Hayes' income will necessarily alter the amount of Mr. Hayes' child support obligation and child support arrearage, the court's order on remand should recite these altered amounts. The trial court should also grant a judgment to Mr. Hayes in the full amount of Ms. Beuerlein's balance under the promissory note. Finally, the court on remand should determine the amount of attorney's fees that were incurred by Mr. Hayes in enforcing his rights under the promissory note and assess a reasonable amount of these fees against Ms. Beuerlein. The costs of this appeal are taxed to one-half to Ms. Beuerlein and one-half to Mr. Hayes, for which execution may issue if necessary.