IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 15, 2002 Session

## PATSY ELIZABETH MOSS v. JOHN JAMES McGARVEY

**An Appeal from the Juvenile Court for Shelby County**
**No. D 63075     George E. Blancett, Special Judge**

---

**No. W2001-02347-COA-R3-JV - Filed April 16, 2003**

---

This is an action to collect a child support arrearage. The mother and father of two minor children were divorced in 1973, and custody was awarded to the mother. In July 1981, the trial court entered a consent order requiring the father to pay the mother $35 per week in child support. In May 2000, nineteen years after the consent order was entered and ten years after the younger child turned eighteen, the mother filed a petition to collect the child support arrearage from the father. The father argued, among other things, that the mother's petition was barred by the doctrine of laches. The trial court granted the mother's petition and ordered the father to pay the child support arrearage, plus interest and attorney's fees. The father now appeals that order. We affirm, based on established caselaw holding that the doctrine of laches is not available as a defense in an action to recover child support arrearages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Stuart B. Breakstone, Memphis, Tennessee, for the appellant, John James McGarvey.

Ronald D. Teuch, Johnson City, Tennessee, for the appellee, Patsy Elizabeth Moss.

## OPINION

The Petitioner/Appellee Patsy Elizabeth Moss ("Mother") and the Respondent/Appellant John James McGarvey ("Father") were divorced on November 14, 1973. Both of the parties' two children were minors at the time of the divorce. At that time, Father was ordered to pay $35 per week in child support. Approximately eight years later, on July 24, 1981, Mother filed an affidavit stating that Father had failed to pay the court-ordered support. On that same day, the trial court entered a consent order, signed by the parties, requiring that Father pay $35 per week in child support "to the Clerk of [the Juvenile] Court" beginning July 31, 1981.

Approximately nineteen years later, on May 2, 2000, Mother filed a petition for child support. In the petition, she alleged that Father had not paid the child support due under the consent order entered in July 1981. She argued that she was entitled to the child support due from the date provided in the consent order (July 31, 1981) through the date that the youngest child turned eighteen years old (March 18, 1990). The itemized total past due amount sought by Mother was $89,033.68. This was comprised of $16,380 in back support plus $72,653.68 in statutory interest (12%) through and including May 2000.[1] In addition, Mother sought reasonable attorney's fees. On July 27, 2000, Mother filed a petition for contempt against Father, asking the trial court to find Father in contempt for not paying child support as provided for in the trial court's previous orders. On August 17, 2000, the Juvenile Court referee issued a recommendation that Mother's petition be granted. On August 22, 2000, Father requested that the trial judge conduct a hearing on the matter.

On August 23, 2001, the trial court held a hearing. Mother testified that Father made no child support payments to her either during the period in which he was ordered to do so, (July 31, 1981, through March 18, 1990) or during the ten years since that time. She explained that she did not seek to enforce the child support order earlier because she was told that she needed an attorney to do so and she could not afford one. Mother said that she filed the petition after seeing a television program that informed her that she could collect past due child support regardless of how long it had been due. By that time, she could afford to hire an attorney.

Father also testified at the hearing. Father claimed that he made all of the required payments to Mother as they became due, but conceded that he did not pay her through the court clerk's office as required in the July 1981 consent order.[2] Rather, Father said, he paid Mother in the form of money orders or in cash at her request, because Mother did not want the court's administrative fee to be deducted from the amount she was to receive. Father explained that, because of the passage of time, he was unable to obtain proof of those payments. Father kept no record of his payments. He claimed that he contacted his bank to obtain records and was told that he would not be able to afford to obtain such old records. Therefore, because Mother had waited so long to file her petition, Father said that he was forced to rely on "his own good word" to prove that he had made the child support payments.

Father's mother, Carolyn Johnson, also testified at the hearing. She corroborated Father's claim that he had made some child support payments to Mother in cash. She said that she had urged

---

[1] Mother initially requested $283,455.85, which also included back child support between the date of the initial support order (November 14, 1973) and the date provided in the consent order (July 31, 1981). At this stage in the proceedings, however, Mother is pursuing only the support due from the time provided in the consent order.

[2] Father also claimed that, in addition to paying the required child support, he gave his children other financial support by giving them gifts, vacation money, spending money, and vehicles when they turned sixteen.

Father to make these payments by check in order to "safeguard" himself, but that Father insisted that cash was sufficient.[3]

On the date of the hearing, the trial court entered an order granting Mother's petition. The trial court found that Father had failed to prove that he had made any child support payments since July of 1981, and that "the defense of laches has not been proven nor is the equitable defense of laches appropriate in this case." The trial court explained that, pursuant to the rule in **Rutledge v. Barrett**, 802 S.W.2d 604, 607 (Tenn. 1991), Father's laches defense was "inconsistent with the new provisions in [Tennessee Code Annotated § 36-5-101(a)(5)]" and "also overlooks the weight of existing case law on the responsibility of parents to support their children." From that order, Father now appeals. On appeal, he argues only that the trial court erred in rejecting his laches defense.

The trial court's findings of fact must be reviewed **de novo** with a presumption of correctness. **Strickler v. Garrison**, No. 03A01-9705-CH-00181, 1997 WL 772848, at *2 (Tenn. Ct. App. Dec. 11, 1997); Tenn. R. App. P. 13(d). Generally, a trial court's application of the doctrine of laches lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. **John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.**, 715 S.W.2d 41, 46 (Tenn. 1986). In this case, however, whether the doctrine of laches is available as a defense is an issue of law, subject to **de novo** review, with no presumption of correctness. **See Rutledge**, 802 S.W.2d at 605; **see also Ridings v. Ralph M. Parsons Co.**, 914 S.W.2d 79, 80 (Tenn. 1996).

Father argues that the trial court erred in rejecting his laches defense as a matter of law. As noted by the trial court, the Tennessee Supreme Court has foreclosed the use of equitable defenses (e.g., laches, estoppel, waiver, and acquiescence) in cases brought to recover child support arrearages.[4] **Rutledge**, 802 S.W.2d at 607. In **Rutledge**, the Supreme Court noted that, prior to the enactment of Tennessee Code Annotated § 36-5-101(a)(5), a child support obligor could obtain a retroactive modification to a child support order under very limited circumstances.[5] In March 1987, however, section 36-5-101(a)(5) was enacted. The statute expressly prohibited any such retroactive modifications, stating that child support orders "shall be a judgment entitled to be enforced as any other judgment of a court." The provision states:

> (5) Any order for child support shall be a judgment entitled to be enforced as any
> other judgment of a court of this state and shall be entitled to full faith and credit in
> this state and in any other state. Such judgment shall not be subject to modification
> as to any time period or any amounts due prior to the date that an action for

---

[3]The parties' daughter testified at the hearing, but her testimony did not relate to the issue on appeal.

[4]Inexplicably, neither party discusses the application of **Rutledge** in their appellate briefs.

[5]The former version of Tennessee Code Annotated § 36-5-101 permitted modification of such orders "only upon a specific written finding that the obligor was unable to pay the full amount of such allowance through no intentional fault of his or her own and that the facts of the case require such a modification retroactively in order to meet the ends of justice." **Rutledge**, 802 S.W.2d at 605-06 (quoting Tenn. Code Ann. § 36-5-101 (Supp. 1986)).

modification is filed and notice of the action has been mailed to the last known address of the opposing parties. If the full amount of child support is not paid by the date upon which the ordered support is due, the unpaid amount is in arrears and shall become a judgment for the unpaid amounts and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum. All interest which accumulates on arrearages shall be considered child support. Computation of interest shall not be the responsibility of the clerk.

Tenn. Code Ann. § 36-5-101(a)(5) (2001). The *Rutledge* Court considered whether equitable defenses such as laches could nevertheless be asserted against a claim for a child support arrearage. The Court reasoned that, because retroactive modifications were "plainly unauthorized" by the new statute, "[t]o permit the interposition of traditional equitable defenses to the enforcement of child support orders would obviously defeat the very purpose of the amendment, by creating a situation where exceptions could easily swallow up the rule." *Rutledge*, 802 S.W.2d at 607. Thus, the *Rutledge* Court determined that an equitable defense such as laches could not be asserted against a claim to collect a child support arrearage.

Generally, "[l]aches is an equitable doctrine that can be invoked when a party exercises unreasonable delay in pursuing one's rights." *Strickler*, 1997 WL 772848, at *4. Since *Rutledge*, however, Tennessee courts have consistently concluded that, as a matter of law, this equitable defense is not available in a child support arrearage case. *See*, *e.g.*, *State ex rel. Buchanan v. Buchanan*, No. M1998-00962-COA-R3-CV, 2002 WL 75932, at *2 (Tenn. Ct. App. Jan. 22, 2002) (finding laches defense inapplicable to child support arrearage, but available in claim for spousal support arrearage); *Davis v. Davis*, No. E1999-02737-COA-R3-CV, 2001 WL 1131772, at *5 (Tenn. Ct. App. Sept. 25, 2001) (finding laches defense inapplicable, but noting that the result "does seem harsh"); *In re: Estate of Meader*, No. 03A01-9707-CH-00252, 1997 WL 672205, at *2 (Tenn. Ct. App. Oct. 30, 1997) (finding laches defense inapplicable, even though statute of limitations defense was viable); *Burkeen v. Burkeen*, No. 02A01-9109-GS-00194, 1992 WL 85800, at *2 (Tenn. Ct. App. Apr. 29, 1992) (finding laches defense inapplicable, even when petitioner filed her claim over fourteen years from the time the court ordered support). Father has submitted no authority to suggest why the rule set forth in *Rutledge* is inapplicable to the case at bar. Therefore, we must conclude that the trial court did not err in rejecting Father's laches defense, and in granting Mother's petition.

The decision of the trial court is affirmed. Costs are taxed against the appellant, John James McGarvey, and his surety, for which execution may issue, if necessary.

_____

HOLLY KIRBY LILLARD, JUDGE