IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 22, 2004 Session

## STATE OF TENNESSEE *EX REL.* MARGARET ESTELLE MITCHELL
v.
## RAY ALLEN LEA

## STATE OF TENNESSEE *EX REL.* KATHERINE A. YARBROUGH
v.
## WILLIAM R. JOHNSON

**A Consolidated Appeal from the Juvenile Court for Shelby County**
**No. E941, No. 139021     Harold W. Horne, Special Judge**

_____

**No. W2003-01650-COA-R3-JV - Filed November 16, 2004**

_____

This is a consolidated appeal involving two Title IV-D child support cases. In each case, the mother had custody of the children, and the father was subject to a court order requiring monthly child support payments. The mother in each case received State assistance, and consequently the father was required to make the child support payments through the State's central collection and disbursement unit. Years later, after significant child support arrearages had accrued, the father in each case filed a motion to modify the child support order and requested that the court terminate his child support obligation. Each mother joined in the father's request, confirming that she no longer wanted the State to enforce the father's child support obligation. In each case, the State objected, asserting that the mother had assigned to the State her right to the child support payments when she accepted public assistance benefits. The trial court dismissed each case and forgave each father's outstanding child support arrearage. The State now appeals. We reverse, in both cases, concluding that the trial court erred in retroactively modifying its child support orders and in terminating the cases before the State had been reimbursed for public assistance benefits received by the mothers.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is**
**Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General & Reporter, and Stuart F. Wilson-Patton, Senior Counsel, Nashville, Tennessee, for the appellants, State of Tennessee *ex rel.* Margaret Estelle Mitchell and State of Tennessee *ex rel.* Katherine A. Yarbrough.

Ray Allen Lea, appellee, *pro se*.

William R. Johnson, appellee, *pro se*.

# OPINION

This consolidated appeal arises from two cases involving the trial court's authority to retroactively modify a preexisting child support order, and to dismiss a case under Title IV, chapter D of the Social Security Act ("Title IV-D"), when the State has not yet been reimbursed for public assistance benefits received by the obligee parent.[1] The pertinent facts of each case will be outlined separately, and the common legal issues will be addressed together.

## *State ex rel. Mitchell v. Lea, No. E941*

On August 19, 1993, the Petitioner/Appellant State of Tennessee ("State"), as assignee of Margaret Estelle Mitchell ("Mitchell"), filed a petition in Juvenile Court against Respondent/Appellee Ray Allen Lea ("Lea") to establish paternity of Nicholas Lea ("Nicholas") (born January 20, 1993).[2] On September 7, 1993, the Juvenile Court Referee found that Lea was the father of Nicholas and entered an order requiring Lee to pay child support of $200 per month, including the clerk's fee ("September 1993 Order"). The September 1993 Order states that, "[u]nless specifically ordered by the Court, such support shall not be reduced or prorated." On January 13, 1994, the Juvenile Court issued an Income Assignment Order for $214.58 per month, of which $14.58 was to go toward support arrearages, with payments to be made to the State's central collection and disbursement unit.[3]

---

[1] "[A] Title IV-D proceeding is commenced when a custodial parent applies to a Title IV-D service provider for assistance in establishing, modifying, or collecting child support. For the purposes of the Title IV-D program, it makes no difference whether the proceeding began as a Title IV-D proceeding or whether the custodial parent initiated the proceeding or is responding to the obligor parent's petition to modify or eliminate an existing child support obligation." **Baker v. State ex rel. Baker**, No. 01A01-9509-CV-00428, 1997 WL 749452, at *4 (Tenn. Ct. App. Dec. 5, 1997).

[2] The petition also alleged that Lea was the father of another of Mitchell's children, Michael David (born December 17, 1991). Tests proved, however, that Lea was not that child's father, and the petition as it related to Michael was dismissed.

[3] The September 1993 Order and the income assignment directed that Lea's child support payments be made to the juvenile court clerk. By statute, orders in Title IV-D support cases and income assignments that direct that child support payments be made to the court clerk's office are "deemed to require that the support be sent to the central collection and disbursement unit," which is the Tennessee Department of Human Services in Tennessee. *See* Tenn. Code Ann. § 36-5-116(a)(1) (2001 & Supp. 2003).

On May 14, 1996, Mitchell went to the local Department of Human Services ("DHS") office and signed a JC-94 form, which is a request that her case with the DHS be closed. At that time, Mitchell believed that her act of signing the form meant that her case was administratively closed, and that Lea's child support obligation was terminated. It is undisputed, however, that Mitchell received public assistance benefits "off and on" from 1993 through 2002, and that, at the time Mitchell requested closure of her case, the State had not been reimbursed for the public assistance benefits that Mitchell had received.

On September 18, 2002, Lea filed a motion in the Juvenile Court to modify the September 1993 Order, claiming that his child support obligation should be terminated because of changed circumstances. The only changed circumstance, however, was that Mitchell had requested that her child support case be closed. Lea's motion also requested that the amount of his child support arrearage be established. On the day Lea's motion was filed, the Juvenile Court Referee conducted a hearing on it. After the hearing, the Referee entered findings and recommendations concluding that Lea's child support obligation under the September 1993 Order ended when Mitchell requested closure of her case in May 1996, and that she was allowed by the Title IV-D agency to close her case administratively by the execution of "the then appropriate form (JC-94)." The Juvenile Court Referee also found that Lea should be given a $14,000 credit for necessaries he had provided to Nicholas since Mitchell's closure of the case in May 1996. On the same day, the Juvenile Court granted the State's request for a *de novo* hearing.

On May 8, 2003, a *de novo* hearing was held before the Juvenile Court Judge. The record on appeal contains a transcript of that hearing. Both Mitchell and Lea were present at the hearing, but only Mitchell was sworn as a witness. In her testimony, Mitchell acknowledged that she had received public assistance benefits "off and on" between 1993 and 2002. She said that Nicholas was her only child fathered by Lea, but that she has three other children not fathered by Lea. Mitchell maintained that she and Lea had lived together off and on over the years, and said that Lea had paid child support for Nicholas directly to her. She did not testify as to the amount that Lea had purportedly paid directly to her. Mitchell stated that Lea provided for Nicholas, and that he helped provide for the other children as well. She claimed that she was told by the welfare department that it was permissible for Lea to make the required child support payments directly to her, rather than through the central collection and disbursement unit. Mitchell conceded that, when she began receiving public assistance benefits, she was informed that she had assigned her right to receive child support to the State. Mitchell was unsure whether she was receiving public assistance at the time that she attempted to administratively terminate Lea's child support obligation. Mitchell asserted that Lea had tried to pay the State on his arrearage owed to the State with a $1,000 check, but she said that Lea's check was sent back. She indicated that Lea's income tax refund from 2001 had been intercepted by the State to pay child support arrears, but that she did not believe that the government had any reason to keep that money.

The State asserted that, as of April 2003, Lea owed $14,683.32 in child support arrears under the September 1993 Order. The State claimed that, because Mitchell had received public assistance benefits off and on from 1993 to 2002, she had assigned all of her rights to child support to the State.

The State further argued that Lea was not entitled to credit for any direct payments made to Mitchell, because the payments were not made through the State disbursement unit as required by statute. The State also offered proof that, even after Mitchell attempted to administratively close her case in May 1996, it would have been reactivated by her receipt of public assistance benefits in June 1998.

At the conclusion of the hearing, the Juvenile Court Judge confirmed the decision of the Juvenile Court Referee. The Juvenile Court found that the local DHS office had informed Mitchell that her case would be closed by her execution of the JC-94 form in May 1996. The Juvenile Court reasoned that "the State [sought] to perpetrate a fraud on the parties by allowing them to rely upon the State's assurances that their order [sic] had been closed and then 10 years later arguing that the closure was not effective . . . ." Based on this, the Juvenile Court's written Order stated that the September 1993 Order was dismissed as of May 14, 1996, when the parties requested closure of the case. The Juvenile Court Judge also confirmed the Juvenile Court Referee's conclusion that Lea should receive a credit against his child support arrearage of $14,000 for necessaries he had provided to Nicholas, stating that it was "satisfied with truthfulness of [Mitchell's] testimony" that Lea had provided such support. Accordingly, the Juvenile Court Judge confirmed the decision of the Juvenile Court Referee. The State now appeals that order.

### State ex rel. Yarbrough v. Johnson, No. 139021

On May 9, 1989, Katherine Ann Yarbrough ("Yarbrough")[4] filed a petition in Juvenile Court against Respondent/Appellee William Reed Johnson ("Johnson") for child support for three children born of the parties' marriage, Candice Mitchell Johnson (born September 19, 1985), Kimberly Ann Johnson (born June 1, 1987), and Jessica D. Johnson (born April 27, 1989).[5] Johnson did not file an answer to the petition. On May 22, 1989, the Juvenile Court Referee found Johnson in default and ordered him to pay child support of $525 per month, including the clerk's fee ("May 1989 Order"). On May 30, 1989, the Juvenile Court issued an income assignment in that amount, directing that Johnson's child support payments be made to the State central collection and disbursement unit.[6] Soon thereafter, Yarbrough filed a petition in the Juvenile Court for contempt for Johnson's failure to pay child support under the May 1989 Order. On November 29, 1990, the

---

[4]Yarbrough's petition was brought in her married name, Katherine Ann Johnson. Since that time, apparently, Yarbrough has begun to use Yarbrough as her surname.

[5]The affidavit attached to the petition for support indicates that Yarbrough signed her petition on April 20, 1989, just a week before Jessica was born. Consequently, the petition sought support for Candice, Kimberly, and an "unborn child." By the time the petition was filed on May 9, however, Jessica was born, and Yarbrough then sought support for all three children.

[6]As in Mitchell's case, the assignment in fact directed that the child support payments be made to the clerk of the trial court, but such an assignment is deemed "to require that the support be sent to the central collection and disbursement unit," which is the Tennessee Department of Human Services. *See* Tenn. Code Ann. § 36-5-116(a)(1) (2001 & Supp. 2003).

Juvenile Court denied Yarbrough's contempt petition and ordered that all of Johnson's child support arrearages up to that date be forgiven.

On October 3, 1995, Yarbrough filed a petition in the Juvenile Court to modify the May 1989 Order. On October 11, 1995, the Juvenile Court entered an order decreasing Johnson's child support obligation from $525 per month to $378 per month beginning on October 15, 1995, by agreement of the parties ("October 1995 Order"). On November 9, 1995, the Juvenile Court issued an income assignment order for $378 per month.

On December 11, 2002, Johnson filed a motion to modify, seeking a further decrease in his child support payments due to a change in circumstances. That same day, the Juvenile Court conducted a hearing on Johnson's motion to modify. The record on appeal contains a transcript of that hearing, at which both Yarbrough and Johnson gave unsworn statements. They said that they were divorced in September 1998, and that the children had lived with each of them at different times over the years. At the time of their divorce, Johnson had custody of all three children, but he did not request any child support from Yarbrough, and the divorce court apparently held the child support issue in abeyance.[7] At the time of the Juvenile Court hearing on Johnson's motion to modify his child support obligation, one of the children lived with Johnson, and the other two children lived with Yarbrough. Apparently both parties were receiving public assistance benefits at the time of the hearing. Based on those facts, the Juvenile Court Referee attempted to set the parties' child support obligations to one another based on their salaries at that time. By this method, the Referee determined that Johnson owed Yarbrough $612 per month for two children, which was 32% of his $2,344 monthly income, and Yarbrough owed Johnson $377 per month for one child, which was 21% of her $2,182 monthly income. The Referee explained to the parties that they could not simply agree for Johnson to pay Yarbrough the difference between the monthly payments ($235 per month), because both parties were accepting public assistance benefits at the time, and the computers responsible for tracking the child support information could not process payments made in that manner.

The Juvenile Court Referee also addressed the parties' arrearages. Johnson had signed an affidavit on January 16, 2002, stating that the amount of arrears owed by Yarbrough from September 23, 1998, through December 31, 2001, was zero. Based on this, the Referee determined that Yarbrough owed back support from January 2002 through December 2002 totaling $4,524 ($377 x 12 months). As to Johnson, there was conflicting evidence about the amount of child support he had paid. After hearing the testimony of the parties, however, the Referee estimated that Johnson was $3,750 in arrears from payments due in early 1990 through January 1, 2001. The Referee determined that Johnson owed arrears of $1,495 for 2002. With respect to Johnson's obligations, the Referee concluded by recommending that his child support payments be increased to $612 per month, and that his retroactive child support arrears be established at $3,750 through January 1, 2002, to be paid

---

[7]The record on appeal includes no documentation regarding the parties' divorce proceedings, and no indication of why the issue of child support was in Juvenile Court.

at the rate of $50 per month.[8]  On December 13, 2002, the State filed a request for a hearing before the Juvenile Court Judge, which was granted on the same day.

On May 8, 2002, the Juvenile Court conducted a hearing on the matter.  The record on appeal contains a transcript of that hearing.  At the hearing, no witnesses were sworn, but the trial court heard arguments from the State, Johnson, and Yarbrough.[9]  The State argued that, according to the State's records, Johnson's child support arrearage was $50,625.05 as of April 30, 2003, because, until 2001, Johnson paid no support through the Court, as he was ordered to do.  During the hearing, the Juvenile Court Judge requested to see the "social file" on the case.  The Juvenile Court Judge observed that the file included a JC-94 form, signed by Yarbrough in 1998, which purported to administratively terminate her case.  The JC-94 form to which the Juvenile Court Judge referred was not entered into evidence, nor was it included in the appellate record.  The State argued that the JC-94 form was intended only to terminate Title IV-D services and would not stop Johnson's child support obligation under the court's previous orders.  The State maintained that, in a Title IV-D case, both state and federal law prevented the parties from modifying the previous child support orders absent a petition for modification and an order of the court.  The Juvenile Court Judge disagreed, asking the State's counsel, "What's the difference between this and y'all sending an Administrative Order out?  It's an administrative act of the court."  Yarbrough indicated that she stopped receiving welfare benefits when she started a job in October 1996, but acknowledged that she continued to receive TennCare benefits.  Johnson pointed out to the Juvenile Court that, on four occasions, he had sent a check in the amount of $906.82 to the State to reimburse it for the public assistance benefits paid to Yarbrough.  Each time, he claimed, the money was sent back to him.  In response, the State explained that the money would not be accepted from Johnson to reimburse the State until Yarbrough was first paid her child support.  Both Johnson and Yarbrough indicated to the Juvenile Court that they wanted to terminate Johnson's child support obligation at that time and to forgive his child support arrearage.  The State maintained, however, that Johnson's obligation could not be modified retroactively.

At the conclusion of the hearing, the Juvenile Court Judge rejected the recommendation of the Juvenile Court Referee and found in favor of Johnson.  The Juvenile Court entered a written order dismissing its previous orders relating to child support.  The Juvenile Court Judge reasoned that in 1988, Johnson and Yarbrough had gone to the local Title IV-D agency to close their case, and were assured by the child support office representatives that signing the JC-94 form was all that was needed to terminate the support order.[10]  The Juvenile Court further noted that, for several years, all of the children lived with Johnson, and observed that Yarbrough wanted no court-ordered support

---

[8]It is unclear why the Referee did not include Johnson's 2002 arrears in her recommendation.

[9]Yarbrough was late for the hearing, but the Juvenile Court Judge heard from her before making his final ruling.

[10]The Juvenile Court's order actually says that Yarbrough signed the JC-94 form in 1995, but we assume that this date resulted from a typographical error, considering that the testimony at the hearing indicated that the form was signed in 1998.

or Title VI-D services. The Juvenile Court indicated that "[n]o proof was offered to justify the State's position or to prove that the State had any right to require the payment of support." Based on those factors, the Juvenile Court granted Johnson's motion to modify, and ordered that "the previous order of the Court of October 11, 1995, and all orders since that time be dismissed." The Juvenile Court noted that its ruling was without prejudice to the right of the State to collect any money owed to the State by either parent. The State now appeals that order.

On August 11, 2003, the Mitchell and Yarbrough cases were consolidated for appeal.[11]

*Analysis*

On appeal, the State argues that in both cases the Juvenile Court erred in forgiving the obligor parent's child support arrearages in violation of Tennessee Code Annotated § 36-5-101(a)(5). The State asserts that the Juvenile Court lacked jurisdiction to forgive the arrearages under the September 1993 and October 1995 Orders for the period of time prior to the date the motions for modification were filed and notice given to the opposing parties in accordance with the statute. Further, the State contends that the Juvenile Court erred by depriving the State of child support arrearages which had been assigned to the State by operation of law as a result of the receipt of public assistance benefits by the obligee parents for the benefit of the children in accordance with Tennessee Code Annotated § 71-3-124. The State also claims that the Juvenile Court erred by declaring the September 1993 and October 1995 Orders to be "dismissed" without any basis for granting relief from the judgments pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. Finally, the State argues that the Juvenile Court erred in relying on the JC-94 forms in both cases, because those documents were not properly authenticated, not admitted into evidence, not included in the record, and not the subject of judicial notice.

A trial court's findings of fact are reviewed *de novo* on the record, and those findings are presumed to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Questions of law are reviewed *de novo*, with no presumption of correctness. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

We first address the State's argument that the Juvenile Court below retroactively modified the September 1993 and October 1995 Orders. Tennessee Code Annotated § 36-5-101(a)(5) provides:

> (5) Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. ***Such judgment shall not be subject to modification***

---

[11]Lea filed a letter *pro se* in support of his position on appeal. Johnson did not file a brief or any other document on appeal. Neither Lea nor Johnson were present at oral argument. Thus, this matter is considered on the record, Lea's letter, the State's brief, and the State's oral argument.

> *as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.* If the full amount of child support is not paid by the date upon which the ordered support is due, the unpaid amount is in arrears and shall become a judgment for the unpaid amounts and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum. All interest which accumulates on arrearages shall be considered child support. . . .

Tenn. Code Ann. § 36-5-101(a)(5) (2001 & Supp. 2003). Thus, under the plain language of the statute, an order for child support is not "subject to modification as to any time period or any amounts due" before a petition for modification is filed by one of the parties and notice is given according to the statute. This principle was recognized by the Tennessee Supreme Court in *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn. 1991). The *Rutledge* Court first noted that the statute was amended in 1987 to conform to strict federal requirements under which Tennessee courts "would lose their ability to forgive past arrearages in child support cases." The *Rutledge* Court held that "[t]he language of the 1987 amendments could not be more clear. Retroactive modifications are plainly unauthorized; prospective modifications can be made, but only after notice as provided in subsection (a)(5)." *Rutledge*, 802 S.W.2d at 606; *see also Alexander v. Alexander*, 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000) (noting that "a court has no power to alter a child support award as to any period of time occurring prior to the date on which an obligee [parent] files his or her petition"); *Baker v. State ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 WL 749452, at *2-*3 (Tenn. Ct. App. Dec. 5, 1997) (discussing the history Title IV-D and the effect of the federal requirements on Tennessee legislation).

In the consolidated cases at bar, the Juvenile Court's rulings involving both Lea and Johnson were contrary to the statute's prohibition against retroactive modification of a child support order. In both cases, the trial court was persuaded by the parties' insistence that they no longer wanted current child support nor did they want to collect past child support arrearages. In Lea's case, Mitchell had completed a JC-94 form at the local DHS office and said that she was informed at the time that execution of the form meant that Lea would no longer be obligated to pay child support under the September 1993 Order. Similarly, Yarbrough also completed a JC-94 form in an attempt to terminate her receipt of Title IV-D benefits and cancel Johnson's obligation to pay child support under the May 1989 Order, as modified in the October 1995 Order. Regardless of the misinformed belief of Mitchell and Yarbrough that their execution of the JC-94 forms would effectively cancel Lea's and Johnson's child support obligations under the previous court orders, section 36-5-101(a)(5) plainly requires that "an action for modification" be filed with the court and that notice be given in order to modify the established child support orders. Therefore, we are compelled to reverse the Juvenile Court's rulings to the extent that they "dismissed" the established child support orders and forgave Lea's and Johnson's child support arrearages for the period of time prior to the filing of the petitions to modify, because dismissing such child support orders constitutes an impermissible retroactive modification of those orders. *See Johnson v. Johnson*, No. E2003-00130-COA-R3-CV, 2003 WL 22258180, at *3 (Tenn. Ct. App. Sept. 29, 2003) (finding that "[i]t is well-settled that child

support payments cannot be altered, reduced or forgiven by the court once they become due," even when custody has changed from one parent to another).

Furthermore, Tennessee Code Annotated § 71-3-124 mandates that the right to receive child support of applicants and recipients of public assistance benefits in a Title IV-D case is assigned to the State. Tenn. Code Ann. § 71-3-124 (1995 & Supp. 2003); *see Baker*, 1997 WL 749452, at *3. Federal law prohibits the closure of a Title IV-D case so long as there is a child support arrearage due and assigned to the State as a result of the family's receipt of public assistance benefits. 45 C.F.R. § 303.11(b)(8); *see State ex rel. Mitchell v. Armstrong*, No. W2003-01687-COA-R3-JV, 2004 WL 239811, at *4 (Tenn. Ct. App. Sept. 3, 2004). In *Armstrong*, the mother established paternity against the father of the parties' child in juvenile court, and the father was ordered to pay child support to the mother. Prior to establishing the father's paternity, the mother had received public assistance benefits to care for the child. Consequently, her case was a Title IV-D case, and the father was required to make his child support payments through DHS, the central collections and disbursement unit in Tennessee. The father failed to pay the required support, and the State filed a motion for contempt against him in the juvenile court. At a hearing on the motion for contempt, the mother indicated to the juvenile court referee that the parties had reached a private agreement regarding child support. The mother stated that she wanted to stop receiving Title IV-D benefits and wanted to have the father pay child support directly to her in accordance with the parties' private agreement. The juvenile court referee approved the parties' private agreement and found that it conformed to the child support guidelines, even though the terms of the purported agreement were undisclosed. The juvenile court judge affirmed the recommendation of the referee because the mother had asked that the father's child support payments be suspended, and because the mother stated that she no longer wanted any Title IV-D services. *Armstrong*, 2004 WL 239811, at *2-*3.

On appeal, the State argued, among other things, that even though the mother was no longer receiving Title IV-D benefits, the juvenile court could not honor the mother's request to terminate the father's child support obligation or end the Title IV-D services provided to her. The appellate court agreed and reversed the juvenile court's decision. The appellate court reasoned that, "when a parent receives public benefits from the State, federal and state law both provide that the parent has assigned his or her right to support from any other source to the State, 42 U.S.C. § 608 (a)(3); Tenn. Code Ann. § 71-3-124(a)(1) (Supp. 2003) . . . ." *Id.* at *4. Furthermore, the court held that "[u]nder federal law, a request by the recipient parent to end Title IV-D services may be honored only if the recipient meets at least one of the criteria set forth in the regulation. 45 C.F.R. § 303.11." *Id.* Because the father's arrearage in that case had not been paid and the State had not been paid its assigned arrearage, the mother could not meet any of the criteria necessary to end her Title IV-D services. Thus, the appellate court held that the juvenile court erred in granting the mother's request to end the father's child support obligation and the Title IV-D services. *Id.*

In this consolidated appeal, as to both Lea and Johnson, the Juvenile Court "dismissed" the established child support orders and terminated Lea's and Johnson's past and future child support obligations based on the request of the parties. As was explained in *Armstrong*, the Juvenile Court was without authority to honor the parties' request in light of their receipt of Title IV-D benefits and the fact that the State had not been paid its assigned arrearage. Therefore, as to both Lea and

Johnson, we reverse the Juvenile Court's decision to dismiss the child support orders and to terminate their future child support obligations.

Finally, in Lea's case, the State argues that the Juvenile Court erred in giving Lea credit for $14,000 in necessaries purportedly paid to the custodial mother for the benefit of his child. The State argues that the trial court had no factual or legal basis for granting such credits to Lea. Giving Lea credit for necessaries paid on behalf of Nicholas, the State argues, violates Tennessee Code Annotated sections 36-5-101(a)(4)(A)(ii) and 36-5-101(a)(5), because those statutes prohibit making child support payments directly to the obligee parent. Section 36-5-101(a)(4)(A)(ii) requires that, in a Title IV-D case, the court must order that the payments be made to the central collection and disbursement unit. Further, the statute states expressly that "[n]o credit shall be given by the court, the court clerk or the [DHS] for child . . . support payments required by the support order that are made in contravention of such requirements . . . ." Tenn. Code Ann. § 36-5-101(a)(4)(A)(ii) (2001 & Supp. 2003); *see State ex rel. Patterson v. French*, No. W2000-02668-COA-R3-CV, 2002 WL 1349498, at *4 (Tenn. Ct. App. Feb. 5, 2002) (holding that trial court has no discretion to direct that payments be made directly to the parties). In addition, the State argues, Lea did not submit sufficient proof of necessaries purportedly provided by him that were not being provided by either the State or by Mitchell. Moreover, regardless of whether Lea is entitled to such credits, the State argues, he still owes child support arrears that were assigned to the State.

Under the so-called "necessaries rule," a non-custodial parent may be entitled to a credit for money spent on necessaries for his child "if such payments are for necessaries that the custodial parent either failed to provide or refused to provide." *Castle v. Baker*, No. E2000-02772-COA-R3-CV, 2001 WL 1105321, at *3-*4 (Tenn. Ct. App. Sept. 21, 2001); *see Peychek v. Rutherford*, No. W2003-01805-COA-R3-JV, 2004 WL 1269313, at *3 (Tenn. Ct. App. June 8, 2004). The *Peychek* court discussed the parameters of the rule:

> [T]he credit for necessaries cannot exceed the amount of support due for the period during which the necessaries were furnished. . . . The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed. What items are appropriate and needed depends on the parent's ability to provide and this issue is to be determined by the trier of fact. . . .
>
> In order to maintain a successful claim for necessaries, the plaintiff must prove: (1) that the child needed the particular goods or services that were provided, (2) that the defendant had a legal obligation to provide the goods or services, (3) that the defendant failed to provide the goods or services, and (4) the actual cost of these goods or services.

*Peycheck*, 2004 WL 1269313, at *4 (citations omitted). Thus, an obligor parent seeking credit for necessaries must show that the expenditures were based on the child's need for the goods, that the custodial parent was responsible for but failed to provide the goods, and the actual cost of the goods

provided. "The necessaries rule does not violate T.C.A. § 36-5-101(a)(5) – the statute that forbids the retroactive modification of child support awards." *Id.* at *3 (footnote omitted).

In the instant case, the obligee parent Mitchell testified that obligor parent Lea had made child support payments directly to her over a period of time, and that Lea had been "providing for his child." The Juvenile Court Judge noted that the Juvenile Court Referee had determined "that [Lea] has given [Mitchell] $14,000 of payments direct to her." Based on Mitchell's testimony and the referee's conclusion, the Juvenile Court Judge ordered that the State credit Lea's obligation in the amount of $14,000.

Under the standard set forth in *Peycheck*, the evidence submitted by Lea is insufficient to support a finding that he provided $14,000 worth of necessaries for Nicholas during the time in which he was required to pay child support under the September 1993 Order. There was no evidence that Nicholas needed a good or service which was not provided to him, no evidence that Lea paid for any necessary good or service, and no evidence of the cost of such a necessary good or service. The evidence showed only that Lea paid monies in undetermined amounts directly to Mitchell. This is not the equivalent of providing necessaries. *See French*, 2002 WL 1349498, at *4. Thus, the evidence did not show that Lea's payments met the requirements of "necessaries" under the test set out in *Peycheck*. Under these circumstances, we must conclude that the evidence preponderates against the Juvenile Court's decision to give Lea a $14,000 credit for necessaries. *See id.* at *5.

This holding pretermits the other issues raised in this appeal.

The decision of the trial court is reversed in both *State ex rel. Mitchell v. Lea* and *State ex rel. Yarbrough v. Johnson*, and the causes are remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed to Appellee Ray Allen Lea and Appellee William R. Johnson, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE