# IN THE Court OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 17, 2009

## SANDRA PETERSON v. ROBERT L. PETERSON

**An Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-95-5110057     John H. Gasaway, III, Chancellor**

---

**No. M2008-00631-COA-R3-CV - Filed November 20, 2009**

---

This is a post-divorce petition for contempt. In the divorce decree, the mother was designated the primary residential parent of the three children; the father had standard alternate parenting time and was ordered to pay child support. After the divorce decree was entered, however, the parties and the children continued to cohabit for about five years. During this period of cohabitation, the father did not pay the mother the court-ordered child support, but instead provided necessities for the family. When the father moved out of the home, he began to pay some child support but did not pay the full amount due under the divorce decree. The mother filed a petition seeking to hold the father in contempt of court for failure to pay child support. The trial court referred the matter to a special master. In calculating the father's arrearage, the special master reduced the amount of child support owed by the father based on the dates on which each child reached majority. Over the mother's objections, the trial court adopted the special master's report in full. The mother now appeals, arguing that the trial court erred in reducing the father's child support obligation based on the dates on which the children reached majority and in declining to grant her request for attorney's fees. We affirm the trial court's calculation of the father's child support arrearage, but reverse the denial of attorney's fees to the mother, based on the provisions of the marital dissolution agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Sandra Peterson.

Michael K. Williamson, Clarksville, Tennessee, for the appellee, Robert L. Peterson.

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

Petitioner/Appellant Sandra Peterson ("Mother") and Respondent/Appellee Robert L. Peterson ("Father") have been married to each other twice and divorced twice.[1] During the first marriage, the parties had three children: Deanna (born August 1, 1981), Holly (born July 26, 1984), and Christopher (born April 20, 1988). The second marriage took place in 1994, and the parties were divorced for the second time by final decree entered March 12, 1996. In this second divorce decree, Mother was designated as the children's primary residential parent. Father was awarded standard alternate residential parenting time, was ordered to pay child support of $830 per month, and was required to pay 100% of the children's medical and dental expenses not covered by insurance.

After the parties' second divorce, they continued to cohabit with the children as housemates with separate bedrooms. This period of cohabitation began in March 1996 and ended in September 2001. While the parties cohabited, Father did not pay Mother child support, but he did pay for most of the family's necessities.

In September 2001, Father finally moved out of the home. After he moved out, Father made some of his child support payments to Mother as required under the 1996 final decree of divorce. He did not, however, make all of the required payments.

On January 16, 2002, Mother filed a petition seeking to hold Father in contempt of court for failure to pay child support and for failure to pay the children's medical expenses as required by the 1996 divorce decree.[2] Mother's petition sought to hold Father in contempt for failing to pay child support from the date the divorce decree was entered in 1996, despite the fact that Father lived with the family for several years after that date. On May 15, 2003, Mother filed an amended petition for contempt, asking for a wage assignment and alleging that Father was in arrears at that time in the amount of $2,835. On September 24, 2004, Mother filed another motion for contempt based on Father's alleged failure to pay child support in September 2004, and also for his alleged failure to pay the medical and dental bills for the parties' youngest child, the only one who was a minor at that time. The trial court then referred the case to a Special Master, requiring the Special Master to report to the trial court on all issues related to the determination of Father's child support arrearages, including medical and dental expenses.

To determine the issues referred to him, the Special Master conducted an evidentiary hearing. Both parties testified at the hearing. Much evidence was submitted regarding the claimed child support arrearages and Father's alleged failure to pay for all of the children's medical and dental expenses. In particular, the parties testified about the amounts Father expended toward medical bills,

---

[1] The appellate record does not include the dates of the first marriage and the first divorce.

[2] No issues were raised on appeal regarding child support prior to the parties' second marriage.

dental bills, and necessities for the children during the period from March 1996 to September 2001, in which he continued to cohabit with Mother and his children. Evidence was also submitted regarding the child support payments Father made after he moved out of the house. It is undisputed that Deanna reached majority in August 1999, Holly in July 2002, and Christopher in May 2006 (upon his graduation from high school).

On July 31, 2007, the Special Master filed his Report with the trial court. In the Report, the Special Master calculated Father's child support arrearage for three periods of time: March 1996 through September 2001 (cohabitation period), September 2001 through July 2002 (for two minor children), and August 2002 through May 2006 (for one minor child). For the first time period, in which Father cohabited with Mother and the children, the Special Master determined that Father had contributed significant amounts toward the support of the family. In light of the $830 per month child support obligation under the decree, the Special Master found that Father had a total arrearage of $9,035 for this period.

As to the second time period, the Special Master noted that the parties' oldest child, Deanna, was emancipated while Father was cohabiting with Mother and the children. Considering this, the Special Master found that Father "should have paid child support at the two children rate from September 2001 through July 2002," when only the youngest two children (Holly and Christopher) were minors. The Special Master found that the "two children rate" at that time under the applicable child support guidelines was $783 per month instead of $830. Using $783 as the monthly rate, the Special Master calculated Father's child support arrearage to be $2,737 for the second time period. The third period of time began when the second child (Holly) was emancipated in July 2002. After Holly reached majority, the Special Master found, Father was obligated to pay child support at the "one child rate," *i.e.*, $720 per month, for the remaining minor child (Christopher) until he reached majority in May 2006. Using the $720 monthly rate of child support for this third time period, the Special Master found that Father had in fact overpaid child support between August 2002 and May 2006 by $7,724.40. As to the children's medical expenses, the Special Master found that Father owed Mother $6,461.02 for the children's medical expenses not covered by insurance. In sum, the Special Master determined that Father owed the following:

March 1996 – September 2001: $9,035.00
September 2001 – July 2002: $2,737.00
August 2002 – May 2006: ($7,724.40)
Medical Expenses: $6,461.02
Total Due $10,508.62

It is undisputed that at no point did Father file any sort of petition for modification of his child support obligation.

On August 10, 2007, Mother filed an objection to the Special Master's report. She objected on the basis that the Special Master had misapplied the law with respect to Father's child support obligation, and that "[t]he Report never dealt with attorneys fees." On October 10, 2007, the trial

court held a hearing on Mother's objection and took the matter under advisement.[3] On February 26, 2008, the trial court entered an order adopting the Special Master's Report in full and specifically incorporating it in the order by reference. In addition, the trial court held that "[e]ach party is responsible for their respective attorney's fees." On March 24, 2008, Mother filed a motion to alter or amend pursuant to Rule 59 of the Tennessee Rules of Civil Procedure, but this motion was later withdrawn. Mother now appeals the trial court's February 2008 order.

## ISSUES ON APPEAL

On appeal, Mother challenges neither the trial court's factual findings nor the credits given to Father for the payments he made in support of the children during the period of cohabitation. She likewise does not challenge the trial court's findings as to amounts due for the children's medical and dental expenses. Rather, Mother argues that the trial court erred in reducing the rate of child support used to calculate Father's child support arrearage based on the dates on which the children reached majority. She argues that, because Father never filed a petition to modify his child support obligation, adjusting the applicable rate of child support constituted an impermissible retroactive modification of Father's child support obligation. Mother also argues that the trial court erred in failing to award her attorney's fees, because she was entitled to such fees pursuant to Section 36-5-103(c) of the Tennessee Code Annotated and under the parties' marital dissolution agreement ("MDA"). We will address each issue in turn.

## ANALYSIS

Mother first argues that the trial court should not have reduced Father's monthly child support obligation based on the children reaching majority, absent a petition to modify by Father. This issue is purely a question of law, reviewed on appeal *de novo* with no presumption of correctness in the trial court's decision.[4] *Lichtenwalter v. Lichtenwalter*, 229 S.W.3d 690, 692 (2007).

Mother notes that Section 36-5-101(f)(1) of the Tennessee Code Annotated specifically prohibits the retroactive modifications of an obligor parent's court-ordered child support obligation prior to the date on which a petition to modify the obligation is filed:

> Any order for child support shall be a judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed . . . .

---

[3] The record on appeal does not contain a transcript of that hearing.

[4] Mother does not challenge the *amount* of reduction in this case; rather, she challenges only the reduction itself as a matter of law.

Tenn. Code Ann. § 36-5-101(f)(1) (Supp. 2008). Mother also points out that the Tennessee Supreme Court has recognized this general rule, confirming the legislature's intent that child support orders not be modified retroactively, not even on an equitable basis such as unclean hands or laches. ***See Rutledge v. Barrett***, 802 S.W.2d 604, 605-06 (Tenn. 1991).

It is, of course, well-settled that child support orders must be enforced as any other court order and may not be modified retroactively. ***Id.*** Nevertheless, for purposes of calculating a child support arrearage, proration of the child support based on the emancipation of one of the children covered under the order does not constitute improper retroactive modification. ***Clinard v. Clinard***, No. 01-S-01-9502-CV00021, 1995 WL 563858, at *2 (Tenn. 1995) (designated not for publication).[5] Permitting an obligor parent's child support obligation to be reduced based on one of the children reaching majority simply acknowledges an equally well-settled principle that a parent owes no legal duty to support a child once the child attains the age of majority. ***Id.***

In ***Clinard***, the parties had three children. The father was ordered to pay $60 per week in child support. When he failed to do so, the mother filed a petition for contempt. The father admitted that he owed child support arrearages but argued that they should be calculated by prorating the support award, i.e., reducing it by one third, as each of his three children attained majority. ***Id.*** at *1. The Supreme Court stated:

> Proration . . . is not a retroactive modification of the child support award and its application does not require a petition to, or an order from, the court. Instead proration is simply a rule of law which derives from the legal principle that parents generally owe no duty to support children who have attained the age of majority.

***Id.*** at *2; ***see Corder v. Corder***, 231 S.W.3d 346, 359 (Tenn. Ct. App. 2006); ***see also Brooks v. Brooks***, No. M2007-00351-COA-R3-CV, 2009 WL 928283, at *6 (Tenn. Ct. App. Apr. 6, 2009).

In the case at bar, as Holly and Christopher reached majority, the trial court reduced Father's obligation in a manner consistent with the Child Support Guidelines. The only distinction between the facts in ***Clinard*** and those in the instant case are that, in ***Clinard***, the child support guidelines were not in effect when the original child support order was entered. Therefore, in ***Clinard***, the reduction in the child support arrearage was based on each child's pro rata share of the support obligation. Nevertheless, the reasoning in ***Clinard*** is applicable here; the reduction of Father's child support obligation based on the emancipation of the children was consistent with the child support guidelines.[6] ***See also Lichtenwalter v. Lichtenwalter***, No. M2003-03115-COA-R3-CV, 2006 WL

_____

[5] When a decision is designated "not for publication," it must be viewed as persuasive authority only. ***See State v. Rice***, 184 S.W.3d 646, 663 n.2 (Tenn. 2006); ***Lucas v. State***, 141 S.W.3d 121, 137 n.6 (Tenn. Ct. App. 2004); ***see also*** Tenn. R. Sup. Ct. 4(H)(1).

[6] We find that ***England v. England***, cited by Mother, is distinguishable on its facts. ***England v. England***, No. E2005-00382-COA-R3-CV, 2005 WL 3115867 (Tenn. Ct. App. Nov. 22, 2005). In ***England***, the trial court
(continued...)

236945, at *5 (Tenn. Ct. App. Jan. 30, 2006) (following **Clinard** and holding that "[f]actoring in the reality that two of the [parties'] children had become emancipated for the purpose of determining the amount of [the father's] support arrearage was not a retroactive modification of any earlier child support order"), **rev'd on other grounds**, 229 S.W.3d 690 (Tenn. 2007). Therefore, we find no error in the trial court's adoption of the Special Master's calculations, reducing the applicable rate of child support as each child reached majority.

Next, Mother argues that the trial court had both a statutory duty and a contractual duty to award her attorney's fees in this case. Section 36-5-103(c) authorizes a trial court to award reasonable attorney's fees to a person who is required to return to court to enforce a child support order. The statute provides in relevant part:

> [T]he spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any ... suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, ... at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2005). Additionally, the parties' MDA, incorporated in the March 1996 final decree of divorce, provides for an award of attorney's fees to a party enforcing the agreement:

> 19. In the event that it becomes necessary for either party to bring a Court action to assist in the enforcement of this agreement, the parties agree that any Order to enforce compliance with the terms of this agreement **shall** include that expenses of litigation including reasonable attorney's fees assessed against the violating party.

MDA at ¶19 (emphasis added).

Generally, the question of whether to award attorney's fees, and the amount of such an award, are within the sound discretion of the trial court, and the trial court's decision on this issue will not be disturbed on appeal absent an abuse of that discretion. **See Aaron v. Aaron**, 909 S.W.2d 408, 411 (Tenn. 1995); **Richardson v. Spanos**, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). An abuse of discretion occurs "only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs

---

[6](...continued)
retroactively modified the mother's child support obligation based on a reduction in the mother's income as well as the emancipation of one of the parties' two children. This Court reversed, finding that the retroactive modification of the mother's obligation was improper. However, the court's opinion did not specify that its holding was based on the emancipation issue. **Id.** at *3. Moreover, the mother was not represented by counsel, and she did not argue that a reduction in her child support arrearage based on a child's emancipation did not constitute retroactive modification.

reasoning that causes an injustice to the complaining party." ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003).

Recognizing this general rule, Mother argues that in light of the language in the parties' MDA mandating an award of attorney's fees, the trial court's denial of her request for attorney's fees constituted an abuse of discretion. We agree. Mother filed the petitions for contempt based on Father's failure to fulfill his child support obligations and to pay for the children's medical and dental services. Although Mother did not recover everything that she requested in her petitions, she was clearly the prevailing party with regard to her petition to enforce the obligations set out in the parties' MDA and incorporated in the trial court's March 1996 order. ***See Taylor v. Fezell***, 158 S.W.3d 352, 359-60 (Tenn. 2005). Therefore, we must conclude that, under these circumstances, the trial court's denial of Mother's request for attorney's fees amounted to an abuse of discretion. Accordingly, we must remand this matter to the trial court to determine a reasonable amount of fees.

The decision of the trial court is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are to be taxed equally to Appellant Sandra Peterson, her surety, and Appellee Robert Lee Peterson, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE